[Crim. No. 919.    Department One.—May 22, 1903.]

THE PEOPLE, Respondent, v. J. B. SEELEY, Appellant.

CRIMINAL LAW—LIBEL PER SE—INFORMATION.—Where the information charges a libel *per se*, that the defendant had been guilty of theft, and had been unjust and dishonest in his business, it need not allege that the libelous matter tended to impeach the honesty, integrity, virtue, or reputation of the person libeled.

ID.—ADVISORY INSTRUCTIONS—PROVINCE OF JURY.—Upon a prosecution for criminal libel, the jury are the judges both of the law and of the fact, and the instructions of the court are only advisory; yet it is proper for the court to inform them as to the rules of evidence, and to enlighten them as to the law applicable to the case, and to tell them that they should go contrary to the instructions of the court only when they have a deep and confident conviction that the court is wrong and that they are right.

ID.—EVIDENCE—FALSITY OF BOOKS—OMISSION OF CREDITS—REBUTTAL.—Where the charge was made that the defendant "kept false books," evidence was admissible to show that he repeatedly omitted to give credits, which were corrected at the instance of witnesses; and evidence is admissible, in rebuttal, to show that he made mistakes against himself, and that he corrected a mistake against a witness in advance of its discovery by him.

APPEAL from a judgment of the Superior Court of Tulare County and from an order denying a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion.

H. C. Lillise, and J. S. Clack, for Appellant.

Tirey L. Ford, Attorney-General, and A. A. Moore, Jr., Deputy Attorney-General, for Respondent.

SMITH, C.—The defendant was tried before a jury for criminal libel, found guilty, and sentenced to imprisonment in the county jail for six months. This appeal is from the judgment and an order denying defendant's motion for a new trial, and comes here on a bill of exceptions. Counsel contends that certain errors of law occurred during the trial of sufficient importance to justify the reversal of the judg-

ment and order. We will mention those that appear neces-
sary for a correct disposition of the points presented on this
appeal.

1. The defendant claims that his demurrer should have been
sustained to the information, for the reason that it fails to
state facts sufficient to constitute a public offense, and that it
does not comply with the Penal Code in stating the facts fully.
It is only necessary to state the portion of the information to
which objection is made, as it is quite a lengthy document.
It states that the defendant did ''willfully and maliciously
and with intent thereby to injure one T. J. Brundage, and to
expose him to public hatred, contempt, and ridicule, compose
and in numerous printings in the form of circulars publish
and circulate, among other things a malicious libel and def-
amation of and concerning the said T. J. Brundage. [Here
follows a copy of the circular in the respect wherein it is
claimed to be libelous.] That by the matters printed in said
circulars and hereinbefore set forth in this information the
said Seeley meant, and intended to state and represent, to
those to whom he delivered said circulars as aforesaid, that
said T. J. Brundage was guilty of theft and had been unjust
and dishonest in his business and in his dealings with those
with whom he had had business transactions, and each and all
of said persons to whom said Seeley delivered said circu-
lars understood said matters in said circulars to have said
libelous sense and meaning.'' The matter contained in the
circulars was grossly libelous, and no claim is made that it
was not so. Libel is defined in the Penal Code (sec. 248) as
''a malicious defamation, expressed either by writing, print-
ing, or by signs or pictures, or the like, tending to blacken
the memory of one who is dead, or to impeach the honesty,
integrity; virtue, or reputation, or publish the natural or
alleged defects of one who is alive, and thereby to expose him
to public hatred, contempt, or ridicule.'' The alleged defect
in the information is, that it does not allege that the libelous
matter so published tended to impeach the honesty, integrity,
virtue, or reputation of Brundage. We do not think it neces-
sary that the information should so allege where the matter
published is libelous *per se.* Of course, the publication must
have the tendency to do some one of the things prescribed in

the statutes, but in case the alleged libelous matter is such *per se,* it is sufficient to set it forth, and the law says it tends to impeach the honesty, integrity, virtue, or reputation of the party concerning whom it was published. The malicious defamation is complete when the defendant has done the thing or things set forth in the statute. The information states clearly that defendant did the thing defined as libel. As to whether or not the published matter tended to impeach the honesty, integrity, virtue, or reputation of the party concerning whom it was published, when the matter is libelous *per se,* is as easily ascertained by the inspection of it as it would be by a statement of the district attorney as to his opinion concerning it. It is provided in section 964 of the Penal Code: "An indictment or information for libel need not set forth any extrinsic facts for the purpose of showing the application to the party libeled of the defamatory matter on which the indictment or information is founded; but it is sufficient to state generally that the same was published concerning him, and the fact that it was so published must be established on the trial." If the facts are stated in ordinary and concise language so that a person of common understanding knows what is intended, it is sufficient. (Pen. Code, sec. 950.) The defendant could not have been misled by this information. It would not have assisted him to state to him the tendency of the matter contained in the circulars. *People* v. *Mooney,* 127 Cal. 339, is not in conflict with what we have said. In that case the "intent to destroy the building" was held to be the essential ingredient of the offense of arson. A burning without such intent is not a crime. Therefore, it was held that the burning must have been with the intent to destroy the building, and that the information must so state. In the case at bar the libel consists of the malicious defamation by printing and publishing of and concerning the prosecuting witness the matter set forth in the indictment. If it did not tend to impeach the honesty, virtue, integrity, or reputation of Brundage, the court could so determine on demurrer. The court held that it did, and defendant does not attempt to show that it did not. The demurrer to the information was properly overruled.

2. It is claimed that the court violated the constitution in

its instructions to the jury. The constitution provides: "In all criminal proceedings for libels, the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the parties shall be acquitted; *and the jury shall have the right to determine the law and the fact.*" (Const. Cal., art. I, sec. 9.) The particular instruction complained of is as follows: "This provision of the constitution does not place the jury above the law, or confer upon them the lawful right to decide simply as they see fit, regardless of the law. Under the constitutional law, if the jury can say on their oaths that they know the law better than the court does, they have the right to do so; but before assuming so solemn a responsibility they should be sure that they are not acting from caprice or prejudice, that they are not controlled by their will or wishes, but from a deep and confident conviction that the court is wrong and that they are right. Before saying this on their oaths, it is their duty to reflect whether, from their habits of thought, their duty and experience, they are better qualified to judge of the law than the court. If under all those circumstances they are prepared to say that the court is wrong in its exposition of the law, the constitution has given them that right." It is not claimed that the law as given by the court was erroneous, but that it was error for the court to call the attention of the jury to their duty in considering whether or not they were to set at naught the instructions of the court. We do not think the court erred in giving the instruction. The jury were told in a separate instruction that they were the "sole judges of the law and the facts upon every proposition involved in this case." The instruction did not charge as to a fact, nor did it take from the jury the power to exercise its judgment and determine the law and the fact. The instruction to the jury contained nothing more than the good sense and judgment of any juror should have impressed upon him. The jury are the exclusive judges of all facts under our system; but it has never been held that the court could not state the rules of evidence, the rules as to impeachment of witnesses, and general propositions which might tend to enlighten the jury in arriving at the truth, and thus determine the facts. This provi-

sion in the constitution is contained in nearly all the state constitutions. The occasion for such provision was, that in the early rulings of the courts the jury were required to confine their attention to the facts, and the court determine conclusively the libelous or innocent character of the publication. This doctrine was long ago overruled in England, and the jury are now permitted to judge of the whole case, and to decide not only as to the fact of publication, but upon the *animus* with which it was made, and whether, within the rules of law, the publication is libelous. The judge has the right to instruct the jury, but his instructions are advisory only. The jury could disregard the instructions and bring in a verdict even contrary to the evidence. They are the sole judges of the law as well as of the fact. (Cooley's Principles of Constitutional Law, pp. 280-281.) The jury should have acted with a deep and confident conviction that they were right, whether told to do so by the court or not.

3. One of the charges in the libelous article was, that Brundage in his accounts "failed to give his customers credit for money paid him," or, as otherwise charged, "kept false books"; and it was also insinuated that he never corrected such mistakes until he was caught. And, to justify these charges, witnesses were introduced by the defendant, who testified, without objection, each to an instance of such mistake made by Brundage against him, and corrected at the instance of the witness. To rebut this evidence, witnesses were introduced by the prosecution, who, over the objection of the defendant, testified to instances of mistakes made by Brundage against himself, in accounts with other parties, and, in the case of one of the witnesses, to a mistake made against him by Brundage, but corrected by the latter in advance of discovery by the witness; and to this objection is made.

The objection assumes that the evidence introduced by the defendant tended to prove that the errors made by Brundage were knowingly and fraudulently made; and the assumption is obviously correct. For though in no one of the instances proven did the testimony of the witness tend to prove that the mistake was otherwise than innocent—yet the cumulative effect of all the mistakes (seventeen in number, and all in Brundage's own favor) did tend to prove that they were in-

tentional. Nor if the matter be material do we think there can be any doubt of the admissibility of the evidence. For the general fact proved—namely, the concurrence of a large number of instances of mistakes, all in his own favor—is a fact from which, in the absence of contrary instances, the fraudulent intent of Brundage might reasonably have been inferred. So it is clear that such proof of fraud, strong as it otherwise might be, might effectually be rebutted by the evidence of contrary instances, which was therefore equally admissible. (Code Civ. Proc., sec. 1870, subd. 15, sec. 1960.) It may be added, the defendant's method of proof, so far as it went, was in strict accordance with the inductive method now universally used in scientific investigations, which ordinarily commences with a theory based on an accumulation of particular facts, but requires the theory to be tested by the existence or non-existence of instances to the contrary. The plaintiff's proofs were but in continuation of this method.

We advise that the judgment and order appealed from be affirmed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

Angellotti, J., Shaw, J., Van Dyke, J.

Hearing in Bank denied.