(February 5, 1908.)

STATE, Appellant, v. R. S. SHERIDAN, Respondent.

[93 Pac. 656.]

CRIMINAL LIBEL—SUFFICIENCY OF THE INFORMATION.

1. Under the provisions of sec. 6737, Rev. Stat., libel is a malicious defamation, expressed either by writing, printing, signs or pictures, tending to impeach the honesty, integrity, virtue or reputation of a person and expose him to public hatred, contempt or ridicule.

2. Under this section of the statute, in order to constitute libel, it is not necessary that the alleged libelous matter charge the person named with a crime; but it is sufficient that the defamation tends to impeach the honesty, integrity, virtue or reputation of such person, and thereby expose him to public hatred, contempt or ridicule.

3. Under the statute, a published article as follows: "'Gooding and graft have become so thoroughly known as synonymous terms, that the rank and file will have no more of it. Only federal office-

holders, and those connected with the Gooding-Brady machine, are zealous in the support of the big chief'' (meaning the said Frank R. Gooding), is libelous *per se*.

4. The fact that the alleged libelous article uses a slang word upon which its libelous character depends does not render the article any the less libelous by reason of that fact, provided the word used, although slang, has a well-recognized meaning, or is given a meaning by the article itself, which conveys to the reader the understanding that the word is used in such a way as tends to impeach the honesty, integrity, virtue or reputation of the person named in the article, and thereby expose him to public hatred, contempt or ridicule.

5. The word ''graft'' in its generally accepted meaning, as applied to individuals, public officials, corporations, etc., imputes to the person, officer or corporation charged with grafting, dishonesty; dishonest gain by reason of public office or public or private position; irregular or unlawful means of support; the use of office or position for personal gain without rendering fair or compensatory service; to steal; to swindle.

6. Where a word is capable of two constructions, one actionable and the other not, it is the duty of the court to give to such word the construction which the circumstances show the word naturally bore according to its plain, popular, and ordinary sense, and such as it would naturally be understood to have by persons hearing or reading it in the connection in which it is used, unless it affirmatively appears that it was used or understood in some other sense.

7. Under sec. 6740, Rev. Stat., a defendant charged with libel is permitted to give in evidence as a justification for the publication, the truth of the matter published, and when the article published is libelous *per se*, the proof of the publication makes a *prima facie* case, and it is for the defendant to offer such proof as he may desire, showing the truth of the article published and that the same was published with good motive, and for justifiable ends.

8. Where an article is libelous *per se*, the prosecution is not required to prove the untruth of the article, or that the same was published with bad faith. The truth or good faith of the publication is a matter of defense.

9. An article which gives the opinion of a reporter as to the proceedings of a judicial, legislative or other public official body, is not privileged under sec. 6745, Rev. Stat.

10. Under sec. 6743, Rev. Stat., in order for an article to be privileged, the article itself must be a fair, true report of a judicial, legislative, or other public official proceeding, or of a statement, speech, argument or debate, in the course of the same.

(Syllabus by the court.)

APPEAL from the District Court of Third Judicial District for Ada County. Hon. Fremont Wood, Judge.

Prosecution for criminal libel. Judgment sustaining a demurrer to the information. *Reversed.*

J. J. Guheen, Attorney General, C. F. Koelsch, Prosecuting Attorney of Ada County, and A. A. Fraser, for State.

The court will take judicial notice of the meaning of the word "graft," and that the use of the word in the connection in which it is used in the publication set forth is libelous *per se.* (Sec. 5950, subd. 1, Rev. Stat.; Wigmore on Evidence, secs. 2582, 1955; *Edwards v. Pub. Society,* 99 Cal. 431, 37 Am. St. Rep. 70, 34 Pac. 128; *Clark v. Fitch,* 41 Cal. 472; *Craig v. Warren,* 99 Minn. 246, 109 N. W. 231; 17 Ency. of Law, 2d ed., 896; *Bailey v. Kalamazoo Pub. Co.,* 40 Mich. 251.)

"In determining whether particular words are actionable *per se,* the same rule does not apply to libel as to slander. What would not be actionable without alleging and proving special damage if merely spoken may be actionable *per se* if written or printed or otherwise published in a libel." (2 Current Law, 709, 710; *Douglas v. Douglas,* 4 Ida. 293, 38 Pac. 934; 18 Ency. of Law, 2d ed., 863-865.)

"A candidate for office is as much entitled to protection as any other citizen. Whoever charges him falsely must make good the injury thereby occasioned. He may not avoid this just responsibility by the claim that he acted in good faith without malice." (*Jarman v. Rea,* 137 Cal. 339, 70 Pac. 216; *Post Pub. Co. v. Hallam,* 59 Fed. 530, 8 C. C. A. 201; *Donahoe v. Star Pub. Co.,* 4 Penne. (Del.) 166, 55 Atl. 337.)

"It is libelous *per se* to publish of a public officer false defamatory matter which tends to diminish public confidence in his ability, fitness or integrity and thus injure him in his office, whether the words are published in relation to his office or not." (2 Current Law, 710 et seq.; *Petsch v. St. Paul Despatch Ptg. Co.,* 40 Minn. 29, 41 N. W. 1034; *Buckstaff v. Viall,* 84 Wis. 129, 54 N. W. 111.)

In determining whether certain language charged as libelous is sufficient to sustain an action, the court must consider, not the actual words alone, but also the sense and meaning, under the circumstances of the publication, which such language may fairly be presumed to have conveyed to those who read it. (32 Cent. Dig. 1995; *Bettner v. Holt*, 70 Cal. 270, 11 Pac. 713.)

Frank Martin, for Respondent.

Should the word "graft" be given the worst possible construction, even then the language used does not make that positive charge necessary to constitute libel. Language is not libelous unless it makes some positive charge. (*Evarts v. Smith*, 19 Mich. 55; *Pegram v. Stoltz*, 67 N. C. 144; *Stevenson v. Hayden*, 2 Mass. 406; *State v. Farley*, 4 McCord (S. C.), 317.)

Words published claimed to be libelous, when unexplained, must be construed in their most innocent sense. (*Meritt v. Dearth*, 48 Vt. 65.) It is well settled that the charge must be such as is punishable by the common or statute law. (18 Am. & Eng. Ency. of Law, 2d ed., 869, 70 (a); *Douglas v. Douglas*, 4 Ida. 293, 38 Pac. 934; *Liddie v. Wallon*, 17 Mont. 150, 42 Pac. 289; *Bloss v. Tobey*, 2 Pick. (Mass.) 320; *Allen v. Hillman*, 12 Pick. (Mass.) 101; 2 Wharton on Criminal Law, sec. 1595; *Herr v. Bamberg*, 10 How. Pr. (N. Y.) 128; *Weil v. Altenhofen*, 26 Wis. 708.)

When the publication is not libelous on its face but it is claimed the language has a covert meaning, it is necessary not only to allege and prove the libelous sense in which the words were used by the defendant, but also that they were understood in the same sense by those to whom they were addressed. (*People v. Collins*, 102 Cal. 345, 36 Pac. 669.) Words of doubtful significance or ambiguous should be explained by innuendo. (*Nichols v. Packard*, 16 Vt. 83; *Sheridan v. Sheridan*, 58 Vt. 504, 5 Atl. 494; *Sanford v. Rowley*, 93 Mich. 119, 52 N. W. 1119; *Hemmens v. Nelson*, 138 N. Y. 517; *Belknap v. Bell*, 83 Mich. 583, 21 Am. St. Rep. 622, 47 N.

W. 674, 11 L. R. A. 72; *State v. Neese,* 4 N. C. 691.) When words are of doubtful significance the pleader must allege the sense in which they were used. (*Nichols v. Packard.* 16 Vt. 83; *Sheridan v. Sheridan,* 58 Vt. 504; *Gage v. Shelton,* 3 Rich. (S. C.) 242.)

The publication complained of was privileged because it purports upon its face to be the report of a Republican county convention and the feeling that existed in and around such convention, which, under the laws of the state of Idaho, is a public official body. (Sec. 6743, Rev. Stat.)

Where the information shows, on its face, as it does in this case, that the words were spoken of and concerning a public official or candidate for office, the information must not only charge that they were false, but further charge that the defendant had no good reason to believe that they were true, or that he was negligent and made no effort to ascertain their truth before the publication. (*State v. Balch,* 31 Kan. 465, 2 Pac. 609; 2 Wharton on Criminal Law, sec. 1630.)

Pertinent criticisms of the character of a candidate for popular election addressed to the electors are held privileged. (2 Wharton on Criminal Law, sec. 1636.)

A publication may be libelous on its face, and yet if it is a matter upon which there was a duty to speak it will be privileged. The law of libel is never to be so administered as to impair the just liberty of the press. (Bishop's New Criminal Law, sec. 913, par. 2.)

STEWART, J.—An information was filed against the defendant in the district court of Ada county, charging him with criminal libel. The charging part of the information is as follows: "That on the 18th day of July, 1906, one Frank R. Gooding, then being and for a long time prior thereto having been a public officer, to wit: Governor of the State of Idaho, duly elected, qualified and acting as such; and said defendant R. S. Sheridan then being the proprietor, editor and manager of a newspaper, to wit: The 'Evening Capital News,' which newspaper was then and ever since has been

published and in general circulation in Ada County, State of Idaho; the said R. S. Sheridan as such editor, proprietor and manager did then and there wilfully, unlawfully, maliciously and with intent to injure said Frank R. Gooding, compose, print and publish in the said newspaper, a certain false and malicious defamation of and concerning the said Frank R. Gooding, Governor of Idaho, as aforesaid, and of and concerning the acts of said Frank R. Gooding, as such Governor, which said malicious defamation was of the tenor and effect following, that is to say:

"Even so mild an indorsement as that of Governor Gooding's 'splendid business administration,' could muster but three votes in a Republican county convention near by, where the people are familiar with the record. Gooding and graft have become so thoroughly known as synonymous terms that the rank and file will have no more of it. Only federal office holders and those connected with the Gooding-Brady machine are zealous in support of the big chief" (meaning the said Frank R. Gooding).

"And which malicious defamation tends and did then and there tend to impeach the honesty, integrity and reputation of the said Frank R. Gooding, Governor of the State of Idaho, as aforesaid; thereby exposing the said Frank R. Gooding to public hatred, contempt and ridicule; all of which is contrary to the form, force and effect of the statute in such case made and provided, and against the power, force and dignity of the State of Idaho."

To this information the defendant filed a demurrer, alleging, first, that said information does not state facts sufficient to constitute a crime or public offense under the laws of the state of Idaho; second, that said information fails to state facts sufficient to constitute any public offense or any crime under the laws of the state of Idaho, and particularly as follows, to wit:

"(a)  Said information fails to state or charge any language as published by the defendant Sheridan, which is libelous.

"(b) Said information fails to state or charge that the language which is claimed is libelous was published of and concerning Frank R. Gooding, Governor of Idaho.

"(c) It is nowhere alleged in said information in what way the words set forth could or did affect the party to be defamed injuriously, nor are any facts set forth in said information to which the language alleged to be libelous could so refer as to constitute said language libelous.

"(d) It is nowhere alleged in any averment in said information how or in what way or manner the words used tended to or did tend to impeach the honesty, integrity or reputation of Frank R. Gooding, or in what way or manner said words did or could be understood to impeach the honesty, integrity or reputation of said Frank R. Gooding.

"(e) The information in this case shows that the language which it is charged is libelous was published of and concerning an official body, to wit: A Republican County Convention and under the laws of the State of Idaho, such publication was privileged.

"(f) The information in this case shows that the language which it is claimed is libelous was published concerning Frank R. Gooding as Governor of Idaho and as a candidate for renomination to the office of Governor of Idaho, and fails to show or charge that said language was not published in good faith and with the intention to inform the voters of Idaho of facts which were for the public good, or that the said publication was not made upon reliable information and with the full belief in the truth thereof."

The demurrer was sustained by the court and the state appeals from such decision, under the provisions of sec. 8043, Rev. Stat., as amended by the act of March 15, 1907 (Sess. Laws, 1907, p. 508).

Counsel for the appellant contends that the language published and set forth in the information was libelous *per se;* while counsel for defendant and respondent contends that such language is not libelous *per se,* and requires an explanation by innuendo of the meaning intended to be conveyed by such publication. If the article set forth in the information

and charged to have been published by defendant is libelous *per se,* then the information states facts sufficient to constitute a public offense under the laws of this state, unless the article shows upon its face to have been privileged. Sec. 6737, Rev. Stat., provides as follows: "A libel is a malicious defamation, expressed either by writing, printing, or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue or reputation, or publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt, or ridicule." It will thus be seen that this section provides that libel is a malicious defamation tending to impeach the honesty, integrity, virtue or reputation, and thereby to expose such person to public hatred, contempt, or ridicule. Under this statute the article published as alleged in the information is libelous *per se.* The article says: "Gooding and graft have become so thoroughly known as synonymous terms that the rank and file will have no more of it. Only federal office-holders and those connected with the Gooding-Brady machine are zealous in support of the big chief" (meaning the said Frank R. Gooding). Sec. 6737, *supra,* does not require, in order to constitute libel, that the alleged libelous matter charge the person named with a crime; it is sufficient under the statute that the defamation tends to impeach the honesty, integrity, virtue or reputation of such person, and thereby expose him to public hatred, contempt or ridicule. The statute does not even require that the alleged libelous matter must impeach the honesty, integrity, virtue or reputation of such person, but if it tends to do so, it is libelous.

An examination of the article alleged to be libelous discloses that the charge is made that "Gooding and graft have become so thoroughly known as synonymous terms that the rank and file will have no more of it. Only federal office-holders and those connected with the Gooding-Brady machine are zealous in support of the big chief" (meaning the said Frank R. Gooding). In other words, this article charges Gooding and graft to be the same, or that Gooding is a grafter, and by

reason of being a grafter, the rank and file will have no more to do with him.

Counsel for appellant contends that the word "graft" as applied to individuals, officials or corporations, has a definite and distinct meaning, while counsel for respondent contends that the word "graft" is merely a slang word, and that it has no fixed or settled meaning. The word "graft" as applied to individuals, officials, corporations, etc., is of comparatively recent origin, and has come into general use within recent years, yet during that time its use has been so general that its meaning has become fixed and well recognized. In the Standard Dictionary published in 1905, it is defined as follows: "An irregular or unlawful means of support; a steal or swindle; that which has been obtained by grafting; stolen goods." Grafter is there defined as one who grafts; a swindler or dishonest person. In the Century Dictionary and Cyclopedia, vol. 3, 2591, the following definition is given: "Graft 3 (graft), n. Dishonest gain acquired by private or secret practices or corrupt agreement or connivance; especially in positions of trust, as by öffering or accepting bribes. (slang).

"Graft 3 (graft), v. i. To engage in graft; live by graft. (slang.)

"Grafter 2 (grafter), n. One who takes or makes 'graft' or dishonest private gain, especially in positions of trust, and in ways peculiarily corrupt. (slang)."

The "New Dictionary of Americanisms," published by Louis Weiss & Co., New York, defines it as follows: "Graft—in thieves' parlance, to pick pockets, to help another to steal." The "Dictionary of Slang and Colloquial English," published by E. P. Dutton & Co., New York, defines it: "Graft—To steal."

In the case of *Gregg v. Warren,* 99 Minn. 246, 109 N. W. 231, the supreme court of Minnesota defines the word as follows: "The word 'graft' is commonly used to designate an advantage which one person, by reason of his peculiar position of superiority, influence, or trust, extracts from another."

As to the definition taken from the Century Dictionary, as above given, respondent contends that the word is a slang

term, and that the definition was merely an example to show how it is sometimes used. Respondent then quotes from a number of articles secured from the press of the country dealing with the word "graft," and the use made of it. These articles were promiscuously selected and show many different uses given to the word "graft." It is history, however, that during the last four or five years the press and magazine writers have been very generous in the use of this word "graft," and it is doubtful if any other word in the English language, except the common, ordinary, every-day words, has been more generally used than the word "graft." This general use gives to it its meaning, and fixes its standing. The fact that the word is yet a slang word does not detract from or render its meaning any less definite than it would have if it were a word used by the standard writers and authorities in the literary world. It is difficult to draw the line of demarcation between a slang word and a word standardized in good English. The promotion given a slang word so as to entitle it to enter the society of good English is based on its general use in the literature of the country; that it is no longer shunned or disregarded by standard writers. Many words which are now good English and recognized and used by the leading writers of the day were formerly slang, and passed through the intermediate stage of colloquialism before they secured admission to the literary language. "There is no real difference in kind between the processes of slang and those of legitimate speech. Slang is only the rude luxuriance of the uncared-for soil, knowing not the hand of the gardener." Its richness, however, is not changed or added to by its subjection to the care-taker. The fact that a word may be slang to-day and to-morrow may discard its associates and enter better society, does not necessarily give the word a different meaning or change its use or add any strength or force to its meaning. The change is only a matter of recognition on the part of the literary writers of the country. Even though the word "graft" may still be recognized as slang, yet its meaning and use has always been and will be the same. It takes its name and meaning from its use during the slang period. When

standardized its meaning is the same. The fact that an article alleged to be libelous uses a slang word upon which its libelous character depends does not render the article any the less libelous by reason of that fact. If the word used, although slang, has a well-recognized meaning, or is given a meaning by the article itself, which conveys to the reader the understanding that the word is used in such a way as tends to impeach the honesty, integrity, virtue or reputation of the person named in the article, and thereby exposes him to public hatred, contempt or ridicule, it is no less libelous. In the article in question in this case, the writer has placed a construction upon the word "graft" as therein used. It says: "Gooding and graft are synonymous terms," that is, each stands for the other, and means the same as the other, and "have become so thoroughly known, that the rank and file will have no more of it." In other words, the rank and file will have no more of "graft," and no more of anything for which graft stands. The intention evidently of the writer was to imply that by reason of the fact that Gooding and graft were synonymous terms, there was in the word "graft" itself an inherent vice with which the rank and file would have nothing whatever to do, that it was odious, of a nature and character that met the disapproval, censure, and blame of the public. We think it will now be generally conceded that the word "graft" as applied to individuals, officials, corporations, etc., stands for dishonesty; dishonest gain by reason of public office or public or private position; irregular or unlawful means of support; the use of office or position for personal gain without rendering fair or compensatory service; to steal or swindle. If this be a fair illustration of the meaning of the word "graft," the publication of an article signifying that a public official's name was synonymous with this word inevitably tends to impeach his honesty, his integrity and his reputation, and by reason of such fact, necessarily exposes him to public hatred, contempt and ridicule. Certainly, in the publication of the article involved in this case, the defendant did not intend to give Gooding a certificate of good character, testifying to his honesty and integrity, or apply to him

an endearing term. The very reverse is disclosed by the language of the article. The defendant evidently intended, and did in fact say, that by reason of the fact that Gooding and "graft" were synonymous terms, that there was something in or about Gooding, because he was a grafter, which was odious and offensive to the rank and file, and because of that, they would have nothing further to do with him. The language of the article is sufficient of itself to show its tendency, and requires no innuendo or explanation to give effect to that tendency.

In the case of *People v. Seeley,* 139 Cal. 119, 72 Pac. 834, the supreme court of California, in discussing this question, says: "Of course, the publication must have the tendency to do some one of the things prescribed in the statute, but in case the alleged libelous matter is such *per se,* it is sufficient to set it forth, and the law says it tends to impeach the honesty, integrity, virtue, or reputation of the party concerning whom it was published. The malicious defamation is complete when the defendant has done the thing or things set forth in the statute. The information states clearly that defendant did the thing defined as libel. As to whether or not the published matter tended to impeach the honesty, integrity, virtue, or reputation of the party concerning whom it was published, when the matter is libelous *per se,* is as easily ascertained by the inspection of it as it would be by a statement of the district attorney as to his opinion concerning it. It is provided in sec. 964 of the Penal Code: 'An indictment or information for libel need not set forth any intrinsic facts for the purpose of showing the application to the party libeled of the defamatory matter on which the indictment or information is founded; but it is sufficient to state generally that the same was published concerning him, and the fact that it was so published must be established on the trial.' If the facts are stated in ordinary and concise language so that a person of common understanding knows what is intended, it is sufficient. It is clearly libelous under the statutes of this state."

Counsel for respondent contends that where a word is capable of two constructions, one actionable and the other not, that

it is the duty of the court to give to such word an innocent construction if possible, or that construction which will render the same not libelous. The rule, however, as we understand it, is, that where a word is capable of two constructions, one actionable and the other not, that construction will be adopted which the circumstances show the word naturally bore, and that all parts of the article should be taken together in order to determine the true meaning. (*Berea v. Powell* (Ky.), 77 S. W. 381; *Holmes v. Clisby*, 118 Ga. 820, 45 S. E. 684; *Kilgour v. Evening Star Newspaper Co.*, 96 Md. 16, 53 Atl. 716.) The rule of construction now adopted by the courts is, that words are to be construed according to their plain, popular, natural and ordinary sense and as they would naturally be understood by persons hearing or reading them, unless it affirmatively appears that they were used and understood in some other sense. (*Copper v. Greeley*, 1 Denio, 358; *More v. Bennett*, 48 N. Y. 472; *Little v. Barlow*, 26 Ga. 423, 71 Am. Dec. 219; *World Pub. Co. v. Mullen*, 43 Neb. 126, 47 Am. St. Rep. 737, 61 N. W. 108; *Edwards v. San Jose P. & P. Soc.*, 99 Cal. 431, 34 Pac. 128; 2 Current Law, 706; *People v. Ritchie*, 12 Utah, 180, 43 Pac. 209.)

We are not aware of any definition or general use made of the word "graft," which would indicate an innocent act or motive on the part of the person designated as a grafter, and our attention has not been called to any general use made of this word which would not have a tendency to impeach the honesty, integrity or reputation of the person designated as a grafter.

In thus holding we believe we are adopting the use and meaning of this word, generally recognized, as applied to individuals, public officials or corporations, that to charge one with being a grafter has a tendency to impeach his honesty, integrity and reputation.

It is next contended by respondent, in support of the action of the lower court in sustaining the demurrer to the information, that the information should set forth and charge the particular dishonest act imputed to the person named in the article by the use of the word "graft." The defendant who

wrote the article knows best the use made of the word "graft" as intended by him in the published article. He is permitted under sec. 6740, Rev. Stat., to give in evidence as a justification for the publication the truth of the matter published. When the article published is libelous *per se,* the proof of publication makes a *prima facie* case, and it is for the defendant to offer such proof as he may desire, in defense, showing the truth of the article published, and if it appears to the jury that the matter charged as libelous is true, and was published with good motives, and for justifiable ends, the party is to be acquitted. It would be a strange doctrine, indeed, if the state were required, where an article published is libelous *per se,* to prove the untruth of the article when the article charges the person named with a series of acts, any one of which is libelous. If this rule were to prevail, when the state proved one act, the defense might claim that the article intended to charge some other act, and if that be proven untrue, the defense might claim that it was intended to charge another act, and so on; but this rule is not the law where the article is libelous *per se.* (2 Current Law, 707; 6 Current Law, 414.)

It is next claimed that the article in question was privileged. Sec. 6743, Rev. Stat., provides: "That no reporter, editor, or proprietor of any newspaper is liable to any prosecution for a fair and true report of any judicial, legislative, or other public official proceedings, or of any statement, speech, argument or debate in the course of the same, except upon proof of malice in making such report, which shall not be implied from the mere fact of publication." An examination of the article published discloses that the alleged libelous matter did not purport to be a report of any judicial, legislative, or other public official proceeding, or of any statement, speech, argument or debate in the course of the same. The inception of the article says: "Even so mild an indorsement as that of Governor Gooding's splendid business administration, could muster but three votes in a Republican county convention near by, where the people are familiar with the record." This part of the article does not set forth the action of the convention referred to; it is merely a reporter's opinion of the ac-

tion, and does not even claim to be a report of such a convention. But the libelous part of the article which follows is not alleged or charged to be the action or acts of any convention or official proceeding. It does not appear to be the opinion of a reporter as to what took place at an official proceeding or convention. It is a positive declaration and assertion of an alleged fact, and does not come within the provisions of the statute as to a privileged communication. A newspaper has full right to publish the news and to criticise and expose official misconduct and dishonesty; but where an article published is libelous *per se,* the newspaper cannot justify the publication upon the ground that it is a report of an official body, unless the article is confined to the minutes or proceedings of the convention. It cannot shield itself behind a report giving an opinion of what such body or convention did. Where the article published is libelous *per se,* the truth of the article or the motive which prompted its publication are matters of defense. The prosecution is not required to prove the motive or bad faith; the good faith is a matter of defense. We have made a careful examination of all the authorities cited in this case, and the authorities generally, and find that a large number of them have no bearing on the case under consideration, for the reason that the decisions have been made upon statutes different from that of this state. An examination of the statute of this state will at once impress the reader with the fact that it is very strict in its terms, and makes libelous any writing, printing, signs or pictures which tend to impeach the honesty, integrity, virtue or reputation of the person named, and thereby expose him to public hatred, contempt or ridicule.

The statutes of many states require, for the article to be libelous *per se,* that it charge the person named with a crime, that as a fact it impeach the honesty, integrity, virtue or reputation of the person named, but the statutes of this state only require that the article published *tend* to impeach the honesty, integrity, virtue or reputation of the person named, and if so, it is libelous *per se.*

Counsel for both appellant and respondent cite the case of *Douglas v. Douglas,* 4 Ida. 293, 38 Pac. 934. That was an

action for damages for slander. The question in that case was whether or not the words spoken were slanderous *per se,* and the court held that inasmuch as the words spoken did not charge the party against whom they were spoken with a crime, they were not actionable *per se.* We have no statute in this state defining slander or providing what shall constitute slander, but we have a statute defining and prescribing what shall constitute libel.

In determining whether particular words are actionable *per se,* the same rule does not apply to libel as to slander. What would not be actionable without alleging and proving special damages if simply spoken may be actionable *per se* if written or printed or otherwise published in a libel. Any words which would be actionable if spoken will be actionable if published in writing, or its equivalent. (2 Current Law, 709.) The law of libel goes much further than the law of slander and gives a cause of action without the necessity of alleging and proving any special damage, as in the case of slander, for any words which are false and not justified or privileged and which are either injurious to the character or credit, domestic, public or professional of the person concerning whom they are published, or in any way tend to cause men to shun his society or bring him into hatred, contempt or ridicule. The authorities treating of this subject generally are collected and cited in Current Law, vol. 2, p. 710. The case of *Douglas v. Douglas, supra,* is not authority in a prosecution for libel where the alleged libelous matter is such *per se,* even though a crime is not charged. We are therefore of the opinion that the information states a public offense under the laws of this state, and that the district court erred in sustaining the demurrer. The judgment of the district court is reversed and the cause remanded.

Ailshie, C. J., and Sullivan, J., concur.