## NICHOLSON v. STATE.

(No. 804; Decided June 10th, 1916; 157 Pac. 1013.)

LIBEL AND SLANDER—CRIMINAL LAW—APPEAL AND ERROR—BILL OF
EXCEPTIONS—AUTHENTICATION—ACTIONABLE WORDS—IMPUTATION
OF CRIME—PUBLIC OFFICERS—PRIVILEGED CRITICISMS—HARMLESS
ERROR—PRELIMINARY EXAMINATION—CHANGE OF VENUE—STATUTE
—TRIAL—CONSTITUTIONAL LAW—INSTRUCTIONS—DUTY OF JURY—
COSTS—CRIMINAL PROSECUTION.

1. In the absence of a properly authenticated bill of exceptions,
   the Supreme Court will consider only such alleged errors
   as might be considered in the absence of the evidence.

2. An information charging the publication of an article in de-
   fendant's newspaper charging the prosecuting attorney for
   the county with such misconduct that, if true, would render
   him unfit to occupy that position and bring him into public
   scandal and disgrace, charged a criminal libel.

3. A false publication that an officer has actually committed
   some serious act or has been guilty of malfeasance in
   office, though made in good faith and relating to the act
   of an officer in the discharge of his official duties, is not
   privileged within the rule permitting comment and criti-
   cism of the acts of the public officers by the public press
   and by members of the public.

4. Preliminary examinations are required before filing informa-
   tions charging felonies and there was no error in denying
   the motion to quash an information for criminal libel on
   the ground that the justice of the peace before whom a
   preliminary examination was held had refused to grant a
   change of venue asked on the ground that he was preju-
   diced and a material witness for defendant in that pro-
   ceeding.

5. Under the constitutional provision that in all trials for libel,
   both civil and criminal, the truth, when published with
   good intent and for justifiable ends, shall be a sufficient
   defense, and that the jury shall determine the facts and
   the law under direction of the court, an instruction in a
   prosecution for libel that the Constitution did not put the
   jury above the law or give them the right to decide re-
   gardless of the law, and that if they could say on their
   oaths that they knew the law better than the court they
   might do so, if sure that they were not acting from
   caprice or prejudice, or controlled by their will or wishes,
   and if acting from a conviction that the court was wrong
   and they were right, before saying which was their duty

to reflect whether, from their habits of thought, experience, etc., they were better qualified to judge of the law than the court, was proper, as the provision means that the court shall instruct the jury as to the law; and the statement that they should be fully convinced that the court was wrong and that they were right, was also proper.

6. In a prosecution for libel, an instruction, given after the jury's report of their inability to agree, and that they should make another effort to agree, impressing upon the jury the right of giving due attention and consideration to the arguments and opinions of their fellows, and telling them that the verdict to which a juror agrees must be the result of his own convictions, and not a mere acquiescence in the conclusion of his fellow jurors, was correct.

7. Under Comp. St. 1910, Section 6034, providing that in all cases of a conviction of an offense the court shall render judgment against the defendant for the costs of prosecution, the defendant, who, after the jury on a former trial had failed to agree, was convicted on a subsequent trial, was properly taxed the costs of both trials, since the prosecution did not end until final judgment was pronounced.

ERROR to District Court, Fremont County; WILLIAM C. MENTZER, Judge.

Thomas G. Nicholson was convicted of the crime of libel, and he brings error.

See also 23 Wyo. 482, 153 Pac. 749.

*John J. Spriggs,* for plaintiff in error.

The information is insufficient as the publication did not support the innuendos. Nothing may be added to the publication by innuendo to make the article libelous. (In re McDonald, 4 Wyo. 150; Rocky Mt. News Printing Co. v. Fridden, 104 Pac. 956, 24 L. R. A. (N. S.) 891.) The article charged confiscation of a liquor license by a public official. This would not support an innuendo that the official was guilty of robbery. (Rocky Mt. News Printing Co. v. Fridden, supra; Sackett on Instructions, Vol. 2, p. 1490.) Defendant was entitled to a change of venue when he produced the examining magistrate as a witness. The special prosecutors of the case were intensely prejudiced

against defendant and did not act fairly, hence the convic-
tion should be set aside.   (Commonwealth v. Nicely, 130
Pa. 261, 18 Atl. 737;  Vickers v. United States, 98 Pac.
473;  People v. Lange, 90 Mich. 454, 51 N. W. 534;  Peo-
ple v. Aiken, 66 Mich. 460, 33 N. W. 821, 11 Am. St. Rep.
512.)   Unfair prosecutions are a public injustice.   (Hurd
v. People, 25 Mich. 405;  Curtis v. State, 6 Cold. (Tenn.)
11;  State v. Sanford, 1 Nott & McC. (S. C.) 512.)   Spe-
cial prosecutors should not be given authority to conduct
the case.   (McKay v. State, 90 Neb. 63, 132 N. W. 741,
39 L. R. A. (N. S.) 714.)   Defendant had a right to com-
ment upon the acts of a public official.   (Ohio 3 C. D. 397.)
The criticism was privileged.   (State of Kansas v. Wilcox,
97 Pac. 372, 19 L. R. A. (N. S.) 225.)   Good faith and an
honest belief in the truth of the statements is a defense.
(Coleman v. McLennan (Kan.), 98 Pac. 281, 20 L. R. A.
(N. S.) 361.)   The county attorney was permitting viola-
tions of Section 5909, Comp. Stats. 1910, and was subject
to criticism.   Instruction No. 4 was erroneous as malice
cannot be presumed.   (State v. Blaine, 124 Pac. 516.)   De-
fendant was entitled to show all the circumstances under
which he made publication including the sources of informa-
tion     (Underhill on Crim. Evi., Sec. 364 (2nd Ed.)
Instructions numbered 7, 8, 9, 10 and 11 were highly preju-
dicial to defendant.   Instruction No. 14 is inconsistent with
No. 11.   Instruction No. 17 is an attempt to state a matter
as to taking from the jury the right to judge the law and
the evidence.   In criminal libel the jury has a right to judge
the law and facts.   (Art. 1, Sec. 20, Const.;  Gardner v.
State, 139 Pac. 474.)   The jury had a right to say whether
the article was privileged.   (Cooley, Sec. 281;  Odgers on
Libel & Slander, 2 Ed., p. 710;  Bank v. Henty, 7 App.
Cas. 741;  Murray v. Heinze, 17 Mont. 353, 42 Pac. 1057,
43 Pac. 714;  State v. Heacock, 106 Ia. 191, 76 N. W. 654;
Ross v. Ward, 14 S. D. 240, 85 N. W. 182, 86 Am. St. Rep.
746;  Pittock v. O'Neil, 63 Pa. 253, 3 Am. St. Rep. 544;
Duncan v. Williams, 107 Mo. App. 539, 81 S. W. 1175;

Arnold v. Jewett, 125 Mo. 241, 28 S. W. 614; Heller v. Pultizer Pub. Co., 153 Mo. 205, 54 S. W. 457; Ukman v. Daily Record Co., 189 Mo. 378, 88 S. W. 60.) Instruction No. Special was highly prejudicial. It was to only a part of the jury, namely the minority and to matters not arising out of the evidence. (People v. Singh, 128 Pac. 421.) Instructions given out of time; (Sec. 6235, Comp. Stats. 1910 ), it directed the jury to consider the expense of the second trial and matter not in the evidence. The motion in arrest of judgment should be sustained. (Mellen v. Times-Mirror Co., 140 Pac. 277.) The motion for a new trial showed the admission of perjured testimony which defendant had no opportunity to rebut. The conviction should be set aside. (State v. Mounkes, 91 Kan. 653, 138 Pac. 410; Bernstein v. Schneider, 72 Misc. 479, 131 N. Y. Supp. 340; Serwer v. Serwer, 71 App. Div. 415, 75 N. Y. Supp. 842; Seward v. Cease, 50 Ill. 228; Chapman v. Delaware L. & W. R. Co., 102 App. Div. 176, 92 N. Y. Supp. 304; Wehrkamp v. Willet, 1 Daly 4.) This will be done in even civil cases. (Munro v. Callahan, 55 Neb. 75, 75 N. W. 151; McMurray v. McMurray, 67 Tex. 665, 4 S. W. 357.) Public welfare demands a free press. It was shown that the county prosecutor had permitted violations of the criminal statute, hence the criticism was justified. (State v. Wilcox, 97 Pac. 372.)

*D. A. Preston,* Attorney General, and *Wilfred O'Leary,* Deputy Attorney General, for the State.

Preliminary hearings are not required before filing informations charging misdemeanors, hence the refusal of the justice to grant a change of venue was immaterial. (Sections 6093-6094, Comp. Stats. 1910.) Moreover, no change of venue is provided for in preliminary examinations. (Chapter 397, Comp. Stats. 1910.) The bill of exceptions is defective and the matters complained of were not before this court. (Syndicate Imp. Co. v. Bradley, 6 Wyo. 171; Littleton v. Burgess, 16 Wyo. 58.) Conclusions to be drawn from the language of the libelous publication is a

question for the jury and not for the court.  (In re. Mc-
Donald, 4 Wyo. 150;  Newell on Slander and Libel, 2nd Ed.,
p. 191;  Patch v. Tribune Ass'n., 38 Hun 369;  Maynard v.
Firemen's Fund Ins. Co., 47 Cal. 207.)  The ruling of the
trial court as to the evidence of Mrs. Reynolds was cor-
rect.  (40 Cyc. 2431;  Conway v. State, 118 Ind. 482;  Ward
v. State, 85 Ark. 179;  Jones v. State (Tex.) 163 S. W.
81;  Moore v. State (Tex.), 144 S. W. 598;  State v.
Hughes (Kan.), 56 Pac. 142;  State v. Walker, 133 Iowa
489;  State v. Benner, 64 Me. 267;  People v. Caldwell, 107
Mich. 374;  State v. Draughn, 140 Mo. App. 263.)  It is
not necessary for the prosecution to call and examine all of
the witnesses to the prosecution.  (Ross v. State, 8 Wyo.
351;  State v. Kilgore, 70 Mo. 546;  Keller v. State, 123
Ind. 110;  State v. Eaton, 75 Mo. 586;  Coleman v. State,
111 Ind. 563.)  The record fails to disclose wherein the
special prosecutors, Norton, Sheldon and Stone were
biased;  the record is valid as to the grounds upon which
jurors, Thiess, Gosnell and Graham were challenged;  nor
is it shown wherein there was an abuse of discretion in
denying defendant's motion for a continuance;  (McKinney
v. State, 3 Wyo. 719) ; it is unnecessary to comment upon
the evidence for the reason that there is no record of the
evidence before the court.  In libel cases it is for the jury
to determine the law from instructions of the court in the
same manner as the jury determines the facts from the evi-
dence.  (Oakes v. State, 33 L. R. A. (N. S.) 207;  State
v. Syphrett, 13 A. S. R. 616.)  Instructions relating to evi-
dence cannot be considered on appeal in the absence of the
evidence.  An article libelous *per se* carries a presumption
of malice.  (State v. Mason, 26 Ore. 273;  Gallis v. Kilgo,
128 N. C. 402;  Parsons v. People, 218 Ill. 386.)  The giv-
ing of more than one instruction upon the same phase of
the law is not reversible error.  (Robinson v. State, 71
Neb. 142;  People v. Lewis, 252 Ill. 281-286;  People v.
Cotton, 250 Ill. 338-343, 344.)  The special instruction com-
plained of is more favorable to the defendant than to the

State and is not prejudicial; instruction Nos. 19-29 is supported by O'Rourke v. Lewiston, DS, Pub. Co., 89 Me. 310. The remaining assignments of error contained in the motion for a new trial cannot be considered in the absence of the testimony.

BEARD, JUSTICE.

The plaintiff in error was convicted in the district court of the crime of libel and sentenced to pay a fine and the costs of prosecution. From that judgment he brings error.

It appears that a motion for a new trial was filed in the district court and denied; but the denial of that motion is not assigned as error in the petition in error, therefore, the only alleged errors which are here for consideration are those stated in the petition in error. There is among the papers filed in this court what purports to be a bill of exceptions which bears the filing mark of the clerk of the district court, but is not in any manner certified by said clerk as a part of the record or files in the case, and it does not contain or purport to contain all or any of the evidence, nor is it indexed as required by rule 10 of this court. (104 Pac. XII.) However counsel for defendant in error has not seen fit to move to have the purported bill stricken from the files, and as the bill might have been authenticated if timely application to withdraw it for that purpose had been made, we will consider such alleged errors as can be considered in the absence of the evidence.

It is contended that the information does not charge a crime. But upon the face of the information we do not think the objection well taken. The article, which was charged to have been published in a newspaper published by plaintiff in error, is too long to be set out here, and to do so would be of no benefit. But as we read and understand it, it contains much matter which fairly construed is libelous *per se,* and the jury must have so construed it by returning a verdict of guilty. The prosecuting witness, who was the county and prosecuting attorney for Fremont county, was charged by the published article with such miscon-

duct in office that, if true, would render him unfit to occupy that position and would bring him into public scandal and disgrace. It is contended that as the article had reference to the conduct of a public officer it was privileged. It is true that the acts and conduct of public officers are open to criticism by the public press, and legitimate criticism however severe is the right and privilege of the press as well as others. When a newspaper contains a truthful statement of the acts and conduct of an officer it may comment upon, criticise, even severely, the same; but to publish, comment upon and criticise something which an officer has actually done, and to falsely publish to the world that he has committed some criminal act or has been guilty of malfeasance in office are entirely different matters. The former when published from good motives and for justifiable ends is privileged; but the latter never. The rule is stated in 18 Am. & Eng. Ency. of Law, 2nd Ed., 1041, thus: "The official acts of public officers may lawfully be made the subject of fair comment and criticism, not only by the press, but by the members of the public. But the prevailing rule is that charges imputing a criminal offense or moral delinquency to a public officer cannot, if false, be privileged, though made in good faith; and this though the charge relates to an act of the officer in the discharge of his official duties." And in 25 Cyc. 402, the rule is stated as follows: "Comment on and criticism of the acts and conduct of public men are privileged, if fair and reasonable and made in good faith. But the right to criticise does not embrace the right to make false statements of fact, to attack the private character of a public officer, or to falsely impute to him malfeasance or misconduct in office." The rule as stated in the texts quoted is fully supported by the authorities cited in the notes thereto. See also Odgers on Libel and Slander (5th Ed.) 198; Oaks v. State, 98 Miss. 80, 54 So. 79, 33 L. R. A. (N. S.) 207, wherein, after quoting the above quoted text, the court said: "A communication imputing the commission of a criminal offense or of moral delinquency to

a public officer, even in the discharge of his official duties, is therefore not privileged, and the only defense for so doing is that the·same is true, and, in addition, was published from good motives and for justifiable ends. If the communication is in fact untrue, the motive with which it is published is wholly immaterial." See Kutcher v. Post Printing Co., 147 Pac. (Wyo.) 517.

It is further contended that the court erred in denying a motion to quash the information on the ground that the justice of the peace before whom a preliminary examination was held refused to grant a change of venue asked on the ground that he was prejudiced and was a material witness for defendant in that proceeding. Even if that question could be raised in that manner the complete answer to it is found in the statute. (Section 6134, Comp. Stat. 1910.) It is only when a felony is charged, and then only in certain cases, that a preliminary examination is required before filing an information in the district court.

The court gave to the jury the following instruction which is complained of, viz:

"Instruction No. 17. By the constitution of this state it is provided that every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right; and in all trials for libel, both civil and criminal, the truth, when published with good intent and for justifiable ends, shall be a sufficient defense, the jury having the right to determine the facts and the law, under direction of the court. You are the sole judges of the law and the facts. upon every proposition involved in this case.

"This provision of the Constitution does not place the jury above the law, or confer upon them the lawful right to decide simply as they see fit, regardless of the law. Under the constitutional law, if the jury can say on their oaths that they know the law better than the court does, they have the right to do so; but, before assuming so solemn a responsibility, they should be sure that they are not acting from caprice or prejudice; that they are not con-

trolled by their will or wishes, but from a deep and confident conviction that the court is wrong and that they are right. Before saying this on their oaths, it is their duty to reflect whether, from their habits of thought, their duty and experience, they are better qualified to judge of the law than the court. If under all those circumstances, they are prepared to say that the court is wrong in its exposition of the law, the Constitution has given them that right."

The language of the Constitution is correctly set out in the instruction, and it makes it the duty of the court to instruct the jury on the law. "The jury having the right to determine the facts and the law, under direction of the court." (Const., Art. I, Sec. 20.) To our minds this language clearly means that the court should instruct the jury as to the law. This provision, that in action for libel the jury shall have the right to determine the facts and the law, found in our Constitution and in the constitutions or statutes of other states, grew out of the practice in England as modified by what is known as the Fox Libel Act. Prior to that Act in prosecutions for libel the verdict of the jury was special. The only question submitted to the jury being whether the alleged libel had been published; and whether the language supported the innuendo. The question of libel or no libel was determined by the court. By the Fox Act the jury was authorized to return a general verdict of guilty, or not guilty, as in other criminal cases, and thus decide the question of libel or no libel, formerly decided by the court. Those desiring to investigate that matter further are referred to Oakes v. State, 98 Miss. 80, 54 So. 79, 33 L. R. A. (N. S.) 207, and notes, and Sparf and Hansen v. United States, 156 U. S. 51, 15 Sup. Ct. 273, 39 L. Ed. 343, as it is not our intention to discuss the scope of the constitutional provision, as it is not here involved, the court in the instruction given having plainly told the jury "you are the sole judges of the law and the facts upon every proposition involved in this case"; and further, "If under all those circumstances, they are prepared to say that the court is wrong

in its exposition of the law, the Constitution has given them that right." This instruction is almost a literal copy of an instruction approved by the Supreme Court of California in People v. Seeley, 139 Cal. 118, 72 Pac. 834. An instruction to the same effect was approved in State v. Heacock, 106 Ia. 191, 76 N. W. 654. In The King v. Burdett, 106 English Reports (Full Reprint) 873, on page 905, Abbott, C. J., said: "Another ground of the motion was, that the learned Judge gave his own opinion to the jury upon the character of the publication in question, expressing himself at the same time somewhat to this effect: you are to say whether you will adopt this opinion or not; and unless you are satisfied that I am wrong; you will take the law from me. This was supposed to be contrary to, or at least beyond, the duty of the Judge, as prescribed by the statute to which I have just alluded; (The Fox Act.) it was, however, in my opinion, not only not contrary to or beyond the duty of the Judge as prescribed by that statute, but in strict conformity to it." There was no error in the court's telling the jury, in substance, that before rejecting the law as given in the instructions it should be fully convinced that the court was wrong and that the law was otherwise.

After the jury had deliberated for some time they reported their inability to agree, whereupon the court instructed them as follows:

"Gentlemen of the Jury: Upon your report that you are unable to agree in the cause which has been submitted to you, I think it is my duty to remind you that this trial has, as a matter of course, been attended with large expense to the parties, and that you should make another effort to agree. To aid you in the further consideration of the case, I instruct that, although the verdict to which a juror agrees must, of course, be his own verdict, the result of his own convictions, not a mere acquiescence in the conclusion of his fellows, yet in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor and with a proper regard and deference to the

opinions of each other. You should consider that the case must at some time be decided; that you are selected in the same manner and from the same source from which any future jury must be selected, and there is no reason to suppose that the case will ever be submitted to twelve men more intelligent, more impartial, or more competent to decide it, or that more and clearer evidence will be produced on the one side or the other, and' with this in view, it is your duty to decide the case, if you can conscientiously do so.

"In conferring together you ought to pay a proper respect to each other's opinion and listen with a disposition to be convinced by each other's arguments, and, on the other hand, if the larger number of your panel are for conviction, a dissenting juror or jurors should further consider his or their contrary position, which makes no impression on the minds of so many men, equally honest and equally intelligent with himself, and who have heard the same evidence with the same attention and with an equal desire to arrive at the truth and under the sanction of the same oath; and on the other hand, if a majority are for the defendant, the minority ought seriously to ask themselves whether they may not reasonably and ought not to. doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated, and distrust the weight and sufficiency of that evidence which fails to carry conviction to the minds of their fellows."

Defendant excepted to this instruction; but it was quite as favorable to him as to the State, and simply impressed upon the jurymen the duty of giving due attention and consideration to the arguments and opinions of their fellows; and at the same time telling them that the verdict to which a juror agrees must be the result of his own convictions and not a mere acquiescence in the conclusion of his fellow jurors. This instruction was evidently taken from Commonwealth v. Tuey, 8 Cush. (Mass.) 1, and is almost in the identical language of an instruction approved in that case, and was approved in State v. Smith, 49 Conn. 376, 386, and

in Allen v. United States, 164 U. S. 492, 17 Sup. Ct. 154, 41 L. Ed. 528. An instruction, substantially to the same effect was approved by this court in Harris v. State, 153 Pac. 881, 889, citing Allen v. United States, supra. The objection to the giving of the instruction was properly overruled.

It appears that there had been a mistrial of the case, the jury on the former trial having failed to agree. In the judgment appealed from, which was the final and only judgment rendered in the district court, the costs of both trials were taxed against the defendant. Defendant moved to re-tax the costs of the mistrial as being erroneously taxed against him. The motion was denied and he assigns the ruling as error. We think the ruling was right. The statute provides, "in all cases of a conviction of an offense, the court shall render judgment against the defendant for the costs of prosecution." (Sec. 6034, Comp. Stat. 1910.) The prosecution was commenced by the filing of the information and did not end until final judgment was pronounced. Until then it was the same prosecution, the same case, and the costs of prosecution included all costs of such prosecution in the trial court. It is the general rule that when judgment is rendered against a party to an action after he has secured a new trial on appeal he should be taxed with the costs of the trial court on the first trial as well as on the second trial. (Williams v. Hughes, 139 N. Car. 17, 51 S. E. 790, 4 A. & E. Ann. Cas. 77, and cases cited in the opinion and notes.) The reason for so doing is still stronger where there has been a mistrial not resulting in a judgment.

Some other questions have been discussed in the brief of counsel for plaintiff in error, but in the condition of the record cannot be considered. No prejudicial error having been made to appear the judgment of the district court is affirmed.                                              *Affirmed.*

Potter, C. J., and Scott, J., concur.