JAMES M. DRAKE v. THE STATE.

1. The constitutional provision with regard to prosecutions for libel (*Art. I., ? 5*) was not intended to affect the duty of the court, on such prosecutions, to decide all questions of law relating to the admission of testimony and such other matters as are preliminary to the final submission of the case to the jury; nor to affect its duty to instruct the jury respecting their legitimate province in the decision of the cause, and respecting those general principles of the criminal law and of the law of libel, which are of a technical nature.

2. This provision does not deprive the court of the right to express to the jury its opinions touching the character of the particular publication charged as libelous, and the motives and ends presented for its justification.

3. This provision enjoins upon the court the duty of admitting evidence tending to show the truth of the publication and the motives and ends of the defendant in publishing it; and it declares and secures the right of the jury to decide for themselves, with proper regard to the views of the court, whether the meaning and tendency of the publication are such as to bring it within the legal definition of a libel, whether it was privileged under common law rules, and whether it was true and published with motives which to them appear good and for ends which to them appear justifiable.

4. Although a sentence in the charge of the court to the jury be incorrect, if taken alone as an abstract proposition, yet if, when taken in connection with the rest of the charge and as applicable to the facts of the case, it is substantially correct, it will not be deemed erroneous.

5. The refusal of the court, in a prosecution for libel, to express an opinion whether certain portions of a libelous newspaper article are libelous, is not an error requiring the reversal of a conviction, especially if, in the view of the court sitting in review, those portions were libelous.

6. The challenge of a juror "for cause" is insufficient, unless it be stated whether it is for principal cause or to the favor, and set forth the facts on which it rests.

7. If a challenge of a juror for cause, presented by a defendant, be improperly overruled, and then the defendant challenges the juror peremptorily, and does not exhaust his right to challenge peremptorily

before the whole jury is empaneled, the error cannot have prejudiced him in maintaining his defence upon the merits, and so under our statute forms no ground for reversing a conviction.

8. A question, on examination of a witness, which contains an unwarranted assumption of a fact, may properly be overruled.

On error to the Union County Quarter Sessions.

Argued at June Term, 1890, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and MAGIE.

For the plaintiff in error, *P. H. Gilhooly.*

For the state, *R. V. Lindabury.*

The opinion of the court was delivered by

DIXON, J.   The plaintiff in error was indicted, tried and convicted in the Union County Quarter Sessions, for publishing the following newspaper article :

## "AN ALLEGED EDITOR COWHIDED BY AN INDIGNANT WOMAN.

" There was much excitement yesterday over the cowhiding of one of the publishers of the *Herald* by a lady whose home is at Elizabeth and Jefferson avenues.

" Her family, like many others in this city, have been outraged by a villainous statement in that contemptible sheet. The lady called at the office and demanded a retraction, which was obsequiously promised, but never performed by the publisher.

" Upon ascertaining that the villification had not been contradicted, the lady, boiling with indignation, again visited the establishment, and inquired for Henry Cook, one of the publishers.   Mr. Cook hastened to meet his visitor, but had he suspected what was in store for him, he would sooner have sprung from the old pulpit in his office into one of the graves which yawns beneath his window.

"As the lady had called upon '*business*,' she came fully prepared to transact it. '*You are the man*,' she said, ' who promised to contradict a lying statement in your miserable sheet.'

"' Madame, I,' stammered the so-called newspaper man.

"' Don't interrupt me, sir, until I am through,' said the lady. ' You have done my family a foul wrong, and I want to know why you did not keep your promise and make reparation. Why didn't you do so ?'

"' I—I—I forgot about it. You see this office is in very warm water. We·have all we can do to raise money to keep this paper afloat, and besides, we have a libel suit on again at this term of court, and we can't remember all that we promise. We shan't notice your case any further, because we don't want to,' stammered the so-called editor.

"' You don't, eh ? Then I will compel you to.'

"And, suiting the action to the word, she withdrew from her dress a stout whip, and before the alleged editor could beat a retreat she struck him savagely across the head. Howling with pain, the alleged newspaper man sprang over the counter and bounced away, but being overtaken by the lady, was again lashed until he cried for ' mercy.'

"' I will take the first opportunity I can get to give you another trouncing,' consolingly remarked the woman, as she folded up her whip and took her departure, leaving the sobbing editor in the arms of his stalwart ' frog on a stump' partner, who vigorously used the office towel in wiping the blood from his friend's face.

" The affair is ' all the talk ' among the fraternity, most of whom laugh at the editor for showing the white feather and allowing himself to be horsewhipped under his own vine and fig tree, which is so heavily mortgaged that no matter how much the court this term may mulct the concern in for defamation of character, not a cent can be recovered. One of our mounted staff ascertained this morning that Mr. Cook will be able to get about by to-morrow."

Upon a writ of error bringing the record to this court, he presents several reasons for the reversal of the judgment.

Of these the most important relates to the action of the trial court with regard to the respective functions of the court and the jury under our constitution, which declares (*Art.* I., § 5): "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press. In all prosecutions or indictments for libel, the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party shall be acquitted; and the jury shall have the right to determine the law and the fact."

The meaning of this clause, so far as it bears upon the present case, will, I think, be best perceived by recurring to its origin, which is easily discoverable.

The paragraph is an almost verbal copy of article VII., section 9, of the New York constitution of 1821, which was drawn from a statute of that state enacted in 1805. That statute was brought to pass because of an equal division among the justices of the Supreme Court of New York in the case of *The People* v. *Croswell,* reported in appendix to 3 *Johns. Cas.* 337.

Croswell had been tried in 1803 at the Columbia Circuit before Chief Justice Lewis for a libel on President Jefferson, and had been found guilty under a charge of the Chief Justice, that it was no part of the province of the jury to inquire or decide on the intent of the defendant, or whether the publication in question was true, or false, or malicious; that the only questions for their consideration and decision were—first, whether the defendant was the publisher of the piece charged in the indictment; and, second, as to the truth of the *innuendoes;* that the intent of the publisher and whether the publication in question was libelous or not, was, upon the return of the *postea,* to be decided exclusively by the court. On a motion made at bar in 1804 for a new trial, Alexander Hamilton, on behalf of the defendant, contended, that the liberty

of the press consists in the right to publish, with impunity, truth, with good motives, for justifiable ends, though reflecting on government, magistracy or individuals; that the abuse of this right is to be guarded against by subjecting the exercise of it to the animadversion and control of the tribunals of justice; but that this control cannot safely be entrusted to a permanent body of magistracy, and requires the effectual co-operation of court and jury; that it is the general rule of criminal law that the intent constitutes the crime, and that the intent is an inference of fact to be drawn by the jury; that, in determining the character of an alleged libel, the truth or falsehood is, in the nature of things, a material ingredient for ascertaining the intent, though the truth may not always be decisive; that, in the general distribution of power, in any system of jurisprudence, the cognizance of law belongs to the court, of fact, to the jury; that, as often as they are not blended, the power of the court is absolute and exclusive; but that, in criminal cases, the law and fact being always blended upon the general issue of " not guilty," the jury, for reasons of a peculiar and political nature, for the security of life and liberty, are entrusted with the power of deciding both law and fact, although, nevertheless, the court are the constitutional advisers of the jury in matter of law.

Of the four judges who heard the argument, Kent and Thompson, JJ., favored a new trial; Lewis, C. J., and Livingston, J., opposed it.

In the opinion prepared by Judge Kent, the positions of Mr. Hamilton were supported and illustrated by the copious learning of that distinguished jurist. He cited the case of *The Seven Bishops*, 4 *St. Tr.* 394, as an auspicious and memorable instance of the exercise of *the right* (not merely the power) *of the jury to determine both the law and the fact*, and declared that that right had received the sanction of some of the highest authorities in the law; and he announced his own conclusions to be, that, upon every indictment or information for a libel, where the defendant puts himself upon the country by a plea of not guilty, the jury have a right to judge, not only of

the fact of the publication and the truth of the *innuendoes*, but of the intent and tendency of the paper and whether it be a libel or not, in short, " of the whole matter put in issue upon such indictment or information ; " that in this, as in other criminal cases, it is the duty of the court, " according to their discretion, to give their opinion and direction to the jury on the matter in issue," and it is the duty of the jury to receive the same with respectful deference and attention, and, unless they choose to find a special verdict, they are then to exercise their own judgments on the matter in issue, with discretion and integrity. He also adopted, " as perfectly correct, the comprehensive and accurate definition of one of the counsel at the bar, that the liberty of the press consists in the right to publish, with impunity, truth, with good motives, and for justifiable ends, whether it respects government, magistracy or individuals."

The language of Judge Kent on the right of the jury to decide upon " the whole matter put in issue," and the duty of the court, " according to their discretion, to give their opinion and direction to the jury on the matter in issue," was quoted by him from the English statute, known as " Fox Libel bill," 32 Geo. III., ch. 60, passed " to remove doubts respecting the functions of juries in cases of libel." This statute was designed to change a practice that had been in vogue something over half a century at least, for the judge, on trial of an indictment or information for libel, to charge the jury in terms similar to those used by Chief Justice Lewis in the Croswell Case ; a practice which, although upheld by the King's Bench, Lord Mansfield delivering the opinion, in *The King* v. *The Dean of St. Asaph*, 3 *T. R.* 428, *note*, was, on the argument of that cause, assailed by Lord Erskine, with admirable eloquence and force, as modern, fluctuating, unconstitutional and dangerous. The statute declared and enacted that, on such trials, the jury might give a general verdict of guilty or not guilty upon the whole matter put in issue upon such indictment or information, and should not be required or directed by the court or judge to find the defendant guilty merely on

proof of the publication by the defendant of the paper charged to be a libel, and of the sense ascribed to the same in the indictment or information.

Under this statute it became the practice for the judge to tell the jury, if the case so warranted, that in his opinion the publication before them was of the character and tendency attributed to it by the indictment, and that, if it were so in their opinion, the publication was an offence against the law. This practice was declared by all the judges in *Rex* v. *Burdett,* 4 *Barn. & Ald.* 95, to be in strict conformity with the statute, Abbott, C. J., stating that the act was not intended to confine the matter in issue exclusively to the jury, without having the opinion of the judge, but to declare that they should be at liberty to exercise their own judgment upon the whole matter in issue, after receiving thereupon the opinion and direction of the judge. To the same effect are the expressions of the judges in *Baylis* v. *Lawrence,* 11 *Ad. & E.* 920, and in *Parmiter* v. *Coupland,* 6 *Mees. & W.* 105, where Baron Parke speaks of the opinion of the judge, upon the character of the particular publication, as being matter of advice to the jury.

Having before them as guides this English statute thus settling the wavering practice of the courts, the argument of Hamilton and the opinion of Kent, the legislature of New York, in April, 1805, drafted and enacted the law before mentioned, and from one or another of those precedents every form of expression contained in the preamble and first two sections of the enactment is derived. They are as follows:

" Whereas doubts exist, whether, on the trial of an indictment or information for a libel, the jury have a right to give their verdict on the whole matter in issue : *Be it therefore enacted, &c.,* 1. That on every such indictment or information, the jury who shall try the same shall have a right to determine the law and the fact, under the direction of the court, in like manner as in other criminal cases, and shall not be directed or required by the court or judge, before whom such indictment or information shall be tried, to find the defendant

guilty, merely on proof of the publication by the defendant of the matter charged to be libelous, and of the sense ascribed thereto in such indictment or information ; *provided, nevertheless,* that nothing herein contained shall be held or taken to impair or destroy the right and privilege of the defendant to apply to the court to have the judgment arrested, as hath heretofore been practiced.  2. That in every prosecution for writing or publishing any libel, it shall be lawful for the defendant, upon the trial of the cause, to give in evidence, in his defence, the truth of the matter contained in the publication charged as libelous; *provided, always,* that such evidence shall not be a justification, unless, on the trial, it shall be further made satisfactorily to appear, that the matter charged as libelous was published with good motives and for justifiable ends."

We are thus introduced to the very language of that part of our constitutional provision which affords a complete defence to one prosecuted for libel, when he makes it appear to the jury that he published the truth, with good motives, and for justifiable ends, and which establishes the right of the jury, in such prosecutions, to determine the law and the fact. Its sources, I think, render its meaning evident.

It was not intended to affect the duty of the court to decide all questions of law relating to the admission of testimony and such other matters as are preliminary to the final submission of the case to the jury ; nor to affect its duty to instruct the jury with regard to their legitimate province in the decision of the cause, and with regard to those general principles of the criminal law and of the law of libel, which are of a technical nature, and with which the jury can scarcely become acquainted, save through the instructions of the court.   None of these matters was ever subject to doubt in prosecutions for libel, nor did they bring about any of the legislation either in England or in this country.   On these points the instructions of the court retain the same authority as they previously possessed.

Furthermore, this constitutional provision does not deprive the court of the right to express its opinions to the jury touching the character of the particular publication charged as libelous, and the motives and ends presented for its justification. But, since upon these topics an intelligent layman may be as competent to judge as an intelligent lawyer, and because the liberty of the press had been thought to be endangered by the peremptory control over them assumed by the courts, the purpose of the provision was to declare and secure the right of the jury to decide for themselves, with proper regard to the views of the court, whether the meaning and tendency of the publication were such as to bring it within the legal definition of a libel, whether it was privileged under the rules of the common law, and whether it was true and published with motives which to them appeared good and for ends which to them appeared justifiable; in short, the right of the jury to give a general verdict on the whole matter put in issue (if we adopt the English phrase), or to determine the law and the fact (if we employ the equally broad and more explicit American substitute). The provision also enjoined upon the court the duty of admitting evidence tending to show the truth of the publication and the motives and ends of the publisher, and entitled the defendant to an acquittal on his meeting its requirements in these particulars.

Having thus defined the provinces of the court and jury, we turn to the errors assigned upon the record before us.

The record shows that the court laid down to the jury the general legal notion of a libel in terms of which the plaintiff in error does not complain, then read to them the paragraph of the constitution before mentioned, and charged them that they had full power to determine the law and the fact, and that they should decide (1) whether the article was libelous; (2) whether the defendant published it; and (3) whether it was published by him for justifiable ends; that if they were satisfied beyond a reasonable doubt that the article was libelous, was published by the defendant, and was not published for justifiable ends, it was their duty to convict the defendant.

To this the plaintiff in error excepted.

But we find in it no cause for complaint by him. There is no principle in the common law on which the publication could be regarded as privileged, outside of the defence which our constitution either sanctioned or created, viz., that the article was true and published with good motives and for justifiable ends. The instructions favored the plaintiff in error far beyond this provision, for they afforded him a defence if only his ends were justifiable, ignoring any necessity for the truth of the publication and the goodness of his motives.

The court further stated to the jury that if they believed the article was published for the purpose of ridiculing Henry Cook and putting him in contempt, it was their duty to convict; and to this also exception was taken.

As an abstract proposition, it would not be true that a person should be convicted of libel for publishing matter intended to ridicule another and bring him into contempt; for circumstances can be supposed where even such a publication would come within the protection of the constitution. But taken in connection with the previous instructions to the jury as to their full power over all questions, the language here complained of cannot have been understood by them as more than an expression of opinion, by way of advice rather than of peremptory direction, and, so regarded, there is nothing in it illegal or improper as applicable to the case in hand.

Other exceptions were taken to the refusal of the court to charge that certain sentences in the article were not libelous; that the truth of other portions justified them, and that, if the jury believed that Henry Cook had published an untruthful article reflecting on the son of Mrs. Petzold, and had refused to make a correction, and thereupon Mrs. Petzold had sought redress by an attempt to chastise Mr. Cook, the defendant was justified and entitled to an acquittal.

On each of these points the refusal of the court was accompanied by a reference of the matter to the determination of the jury, and sometimes by recommendations which we think were well warranted by the evidence. Had the court undertaken

to express opinions on the several matters contained in these requests, it is not perceived how they could have been otherwise than unfavorable to the plaintiff in error; for, to the mind .of a lawyer, there is not a sentence in the publication which is not libelous or which mere truth would render inculpable, and the record before us does not suggest a motive which should be deemed good or an end which should be deemed justifiable. But the court was not bound to express its opinion on these points. *Baylis* v. *Lawrence,* 11 *Ad. & E.* 920.

No error injurious to the plaintiff was committed in the charge.

Outside of the charge, the first exception is to the overruling of a challenge "for cause" presented against a juror by the plaintiff. As the juror was afterwards challenged peremptorily, and the plaintiff's right to challenge was not exhausted in the empaneling of the jury, this action of the court, even if erroneous, could not have prejudiced the plaintiff in maintaining his defence upon the merits, and so forms no ground for reversal. *Rev., p.* 264; *Crim. Pro.,* § 89. Moreover, the challenge was not legally interposed. It was merely "for cause," without stating whether it was for principal cause or to the favor, and without setting out the facts on which it rested. This is insufficient. *State* v. *Spencer,* 1 *Zab.* 196.

The next exception arises as follows: on the defence a witness testified that he had seen Mrs. Petzold just before the time of the alleged cowhiding, under circumstances tending to show that the publication in that respect was true; on cross-examination the prosecutor was allowed to ask the witness whether he then noticed her condition as to sobriety, and on redirect examination the question, "What did the woman say, that led you to believe that she was drunk?" was excluded. These rulings were not erroneous. The condition of Mrs. Petzold as to sobriety had some bearing upon the truth of the assertion that she then cowhided Mr. Cook, and the witness' observation of her was legitimate evidence of her being drunk or sober. If he had formed his opinion on that point because of anything she said, it would have been competent on redirect

examination to educe what she had said. But it does not appear that her statements had had anything to do with forming the opinion of the witness, and consequently the proper ground for the question overruled was not laid.

The last exception is to the overruling of an offer, by the plaintiff in error, of certain newspaper articles published by Henry Cook two months before the publication charged as libelous. It did not appear, and no offer was made to show, that there was any relation between those articles and that set forth in the indictment. They were therefore properly overruled as irrelevant.

We find no error requiring the reversal of the judgment, and it should be affirmed.