## J. C. OAKES v. STATE.

[54 South. 79.]

1. CONSTITUTION 1890, § 13. *Criminal libel. Province of court and jury. Evidence. Privileged communications.*

　　Under Constitution 1890, § 13, providing that in prosecutions for libel, the jury may determine the law and the facts under the direction of the court, it is proper for the court to instruct that all the law to be considered by the jury in reaching a verdict is contained in its instructions and to refuse to permit counsel to read law books to the jury.

2. PRIVILEGED COMMUNICATIONS. *Good motive.*

　　A communication imputing the commission of a criminal offense or of moral delinquency to a public officer, even in the discharge of his official duties, is not privileged, and the only excuse for so doing is that the same is true and in addition that the same was published from "good motive and for justifiable ends." If the communication is in fact untrue, the motive with which it is published is wholly immaterial.

3. SAME.

　　Where the defense is that the matter charged to be libelous is true, the defendant should be allowed to testify that the publication was made with good motives and for justifiable ends.

APPEAL from the circuit court of Lawrence county.
HON. J. B. WEBB, Special Judge.

J. C. Oakes was convicted of criminal libel and appeals.

*Mounger & Mounger,* for appellant.

The propositions of the law for which we contend are these:

1st. The publication of a truth upon a lawful occasion can not be libelous. The undisputed facts in this case made the occasion a lawful one, and if the publication was in fact true, the defendant was not guilty. We sub-

mit that the defendant would have been acquitted upon
this principle or at least might have been acquitted up-
on this principle of law, if the same had been submitted
to the jury, but the court refused to give us the benefit
of this principle. But if wrong in this, the contention
is not vital to our case and the case should be reversed
for other reasons.

2nd. One can not be held guilty of criminal libel for
the publication on a lawful occasion and with actual
good motives matter believed to be true and which the
defendant had good grounds to believe to be true. · We
find that all the authorities really support this conten-
tion. The gist of the offense is malice, and in a great
many cases malice is inferred or imputed. As a matter
of law, malice must always be there, either as a matter
of law, or found as a matter of fact, and in this case, it
will not and cannot be imputed as a matter of law for
the reason that the occasion is a lawful one, and so
therefore, it must be found as a matter of fact.     If,
therefore, upon a lawful occasion with actual good mo-
tives, the party publishing a matter believed to be true
and which he has good grounds to believe to be true,
there can not be any malice in fact, can not exist al-
together, and malice will not be imputed and if imputed
it will be rebutted by the existence of actual good mo-
tives.

3rd. Malice will not be presumed, but actual malice
must be shown in a case, where upon a lawful occasion
the defendant publishes that which is not true or that
which he has good grounds to believe and does believe
to be true. In such case it does not matter that the
publication turns out to be false.

4th. The jury are the judges of the law as well as
the facts. And this makes them the judges.

(a) As to whether the matter alleged to be libelous
is or is not libelous in fact in law.

(b)   Whether there was malice or want of malice,
whether the case be one where the law would infer malice
or whether the case be one where the law would not infer
malice, and in such case, whether malice, as a matter of
fact, did or did not exist.

(c)  Whether the defendant proceeded upon good mo-
tives or without good motives and this question is rele-
vant only as a means of determining whether or not
there was malice or not malice.

(d)   Whether in the light of all the circumstances
surrounding the publication and leading up to it, the
defendant is guilty or not guilty of making an unlawful
and malicious publication.   28 L. R. A. 667; *St. James
Military Academy* v. *J. M. Gaiser,* 125 Mo. 517; *Harle*
v. *Cartherall,* 14 T. N. S. 801; *Sweeny* v. *Baker,* 13 W.
Va. 184, 31 Am. Rep. 757.

*Carl Fox,* assistant attorney-general, for appellee.

Counsel for appellant offered to read to the jury from
certain text-books, reports and digests, concerning the
law of libel, but it was not permitted to do so by the
court, and assigns that as error, claiming that, since the
Constitution provides that "the jury shall determine the
law and the facts, under the direction of the court,"
all sources of law are open to the jury in such cases.

That section of the Constitution means no more than
that the jury shall, in prosecutions for libel, return a
general verdict of "guilty" or "not guilty;" and that
the court cannot construe a publication to be libelous,
and peremptorily instruct the jury to bring in a verdict
of guilty upon proof of the fact of publication, and of
the sense ascribed to the publication in the indictment.
In other words, ordinarily the meaning and construc-
tion of any document or writing is a question of law for
the court; but under section 13 of the Constitution, in
prosecution for libel, the jury shall construe the paper
or writing which is charged to be a libel, and say whether

it is in fact a libel, and whether it was published with malicious intent. In that sense, and that sense only, shall the jury "determine the law." 32 Geo. III, in 1792; *State* v. *Armstrong,* 106 Mo. 395; *R.* v. *Woodfall,* 5 Burr. 2661; *R.* v. *Shipley* (Dean of St. Asaph), 21 St. Tr. 1043; 3 T. R. 428, n; 4 Doughl. 73; *R.* v. *Withers,* 3 T. R. 428; 32 Geo. III, ch. 60, § 1; *R.* v. *Sullivan* (1868), 11 Cox C. C. 51-52; *Rex* v. *Burdett,* 4 Bard & Ald., 131, 6 E. C. L. Rep. 420; *Com.* v. *Anthes* (Mass. 1855), 5 Gray's Rep. 185, 212-216; 5 Bur. 2666, 2668; *Drake* v. *State,* 53 N. J. L. 23; 7th Edition of Cooley's Constitutional Limitations on page 665.

Section 1276 of the Code of 1906 provides that "in every criminal prosecution for libel it shall be lawful for the defendant upon the trial to give in evidence the truth of the matter written or published, and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the defendant shall be acquitted." Under the Constitution and the statute, therefore, the truth may be given in evidence, but the truth is not a complete defense. The Constitution and statute do not so provide. It is merely a matter to be considered by the jury; but if it shall be proven to the jury that "the matter charged as libelous is true, and was published with good motives and for justifiable ends, the defendant shall be acquitted."

It also follows that whenever a person publishes concerning another that which is of itself a libel, he does so at the peril of its being untrue. If in fact it is untrue, since under the law malice is implied from the fact of publication as it is implied in cases of homicide from the use of a deadly weapon, then the publisher is guilty of criminal libel.

"Pertinent criticisms on the character of a candidate for popular election addressed to the electors are held privileged, if relating to an election and to his official

character, though the privilege does not extend to publications made outside the electoral body. The privilege cannot protect where malice or negligence is shown.''

See also the following authorities: Cooley's Constitutional Limitations, 7th Ed., 619; Odgers' Libel and Slander, 4th Ed., 281-289; Newell on Slander and Libel, 2nd Ed., 504-505; 29 Cyc. 388, 399, and cases cited in notes 13, 14 and 20.

''The publication of an attack upon a person who is not a candidate for votes of the public, but is seeking an appointive office is not privileged.'' 25 Cyc. 405; *Hunt* v. *Bennett,* 19 N. Y. 173; *Knapp* v. *Campbell,* 14 Tex. Ct. Appl. 199, 36 S. W. 765.

There is one other rule of law which I desire to impress upon the court, and that is that whether the occasion is privileged or not, is a question for the court when the facts are undisputed: *Warner* v. *Press Pub. Co.,* 13 N. Y. 181; *Ramsey* v. *Cheek,* 109 N. C. 270; Newell on Slander and Libel, 2nd Ed., 391-392; Odgers' Libel and Slander, 4th Ed. 217, 236, 320, 324.

In Odgers on Libel and Slander, 4th Ed., page 236, it is said: ''As soon as the judge rules that the occasion is privileged, then, but not till then, it becomes material to inquire into the motives of the defendant, and to ask whether he honestly believed in the truth of what he stated. 'That the defendant acted under a sense of duty, though important on the question of malice, is not, I think, relevant, to the question whether the occasion was or was not privileged. That question does not depend on the defendant's belief, but on whether he was right or mistaken in that belief. (Per Lindley, L. J., in *Stuart* v. *Bell* (1891), 2 Q. B. at page 349, cited with approval by Lord Esher, M. R., in *Hebditch* v. *MacIlwaine and others* (1894), 2 Q. B. at page 60, 61).

The publication of this circular to the persons to whom it was proven that it was published, not being

privileged, the law presumes malice from its publication.
Newell on Slander and Libel, 2d Ed., 390, and other
authorities cited herein, above.

Under our Constitution and statutes "the truth may
be given in evidence." The common law is, therefore,
modified; but, that the publication is true, is not made
a complete defense either by our Constitution or by our
statutes. "If it shall appear to the jury that the matter
charged as libelous is true and was published with
good motives and for justifiable ends, the party shall
be acquitted." Section 13 of the Constitution of Miss-
issippi; section 1276, Code of 1906.

Argued orally by *H. C. Mounger*, for appellant, and
*Carl Fox*, assistant attorney-general, for appellee.

SMITH, J., delivered the opinion of the court.

Appellant was indicted and convicted in the court be-
low of libel, and appeals to this court. The indictment
alleged that he had published and circulated a handbill,
charging the circuit judge of the district with having
committed several high crimes and misdemeanors, set-
ting out the particulars thereof, while in the discharge
of his official duties. Appellant's defense was that the
statements made by him were true, and were published
with good motives and for justifiable ends. One of the
instructions given by the court to the jury, at the re-
quest of the state, was as follows: "The court charges
the jury that all the law to be considered by them in
reaching a verdict in the case is contained in the writ-
ten instructions given by the court, and upon these in-
structions and the evidence alone should their verdict
be made." During the argument of the case appel-
lant's counsel attempted to read to the jury from cer-
tain law books dealing with the law of libel, but, on
objection by the state, was by the court prevented from
doing so. These two actions of the court are assigned

for error, and this assignment necessitates a construction by us of that portion of section 13 of our state Constitution of 1890 which provides that "the jury shall determine the law and the facts, under the direction of the court."

Section 13, in full, is as follows: "The freedom of speech and of the press shall be held sacred; and in all prosecutions for libel the truth may be given in evidence; and the jury shall determine the law and the facts under the direction of the court; and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party shall be acquitted." The contention of appellant is that by this section of the Constitution the jury have the right to determine both the law and the facts; that they not only have the right to apply their own knowledge of the law, but may receive information relative thereto from sources other than the instructions of the court; that, consequently, the court erred in granting instruction No. one for the state, and also in not permitting appellant's counsel to read to the jury from law books dealing with the law of libel.

In all criminal cases the guilt or innocence of the defendant is a mixed question of law and fact, and the verdict of guilty or not guilty is a compound of, and determines, both. In rendering such a verdict, juries must act upon the law as given them by the court. The facts they find themselves, then apply the one to the other, and from both determine the guilt or innocence of the defendant on trial. To this extent, they, in all criminal cases, determine both the law and the facts. This results, of necessity, from their right to return a general verdict. This right of juries to render a verdict in criminal cases, as broad as the issue involved, was never doubted after the common law became fully developed, except in cases of trial for criminal

libel, and it was to remove this doubt that this provision
of our Constitution was adopted. This doubt arose by
reason of the decision of Lord Mansfield in the case of
*Rex* v. *Woodfall,* 20 How. State Trials, 895, followed
later, by the full court, in the celebrated case of *Dean
of St. Asaph,* 3 Term R. 428, and by the disagreement
of the judges of the Supreme Court of New York in the
equally celebrated case of *People* v. *Croswell,* 3 Johns.
Cas. (N. Y.) 365. In these cases, in both of which the
defendants were being prosecuted for criminal libel, the
juries were not permitted to pass upon the whole mat-
ter in issue. The only questions submitted to them were:
First, whether the defendant was guilty of publishing;
second, whether the innuendoes were justly stated and
applied. If both of these questions were answered in
the affirmative, then the jury were required to return
a verdict of guilty, leaving the construction of the words
charged to be libelous and the motive of the defendant
in publishing same to be afterwards determined by the
court, as a matter of law, upon a motion in arrest of
judgment.

The ground of the decision in the case of the Dean
of St. Asaph was that all written instruments must be
construed, and the meaning and effect of the words
used therein settled, as matter of law, by the court,
and that consequently, when the words of the alleged
libel were copied in the indictment, and the fact of the
publication and the truth of the innuendoes were by the
verdict of the jury established and placed on the record,
the legal character of the words used could then be
determined by an inspection of the record, and would
be open, after the verdict, to be decided as a question of
law by the court. In 1792, after the decision in this case,
an act known as "Fox's Libel Act," and being chapter
60 of 32 George III, was passed by the English parlia-
ment. This act was entitled "An act to remove doubts
respecting the functions of juries in cases of libel," and

declared that in all such cases the jury might render a general verdict of guilty or not guilty upon the whole matter in issue, and should not be required to render a verdict of guilty merely on proof of publication and of truth of the innuendoes.

The passage of this act was largely the result of the argument of Lord Erskine "in support of the rights of juries" on the motion for a new trial in the case of Dean of St. Asaph. In the course of that argument, among other things, he said: "I may affirm with equal certainty that the general verdict, *ex vi termini*, is universally as comprehensive as the issue, and that consequently such a verdict on an indictment, upon the general issue, not guilty, universally and unavoidably involves a judgment of law, as well as fact, because the charge comprehends both, and the verdict, as has been said is coextensive with it. Both Coke and Littleton give this precise definition of a general verdict, for they both say that, if the jury will find the law, they may do it by a general verdict, which is ever as large as the issue. If this be so, it follows by necessary consequence that, if the judge means to direct the jury to find generally against a defendant, he must leave to their consideration everything which goes to the constitution of such a general verdict, and is therefore bound to permit them to come to, and to direct them how to form, that general conclusion from the law and the fact, which is involved in the term 'guilty.' For it is ridiculous to say that guilty is a fact. It is a conclusion in law from a fact, and therefore can have no place in a special verdict, where the legal conclusion is left to the court." Erskine's Speeches (High's Ed.), vol. 1, p. 329.

In the course of the debates on the bill, while under consideration by parliament, it is said by Mr. Fox, the author thereof, that "there was a power vested in a jury to judge the law and fact as often as they were united; and if the jury were not to be understood to

have a right to exercise that power, the Constitution would never have intrusted it to them;" that this was the case, not of murder only, but of every other criminal indictment; and it was said by Mr. Pitt that he "saw no reason why, in the trial of a libel, the whole consideration of the case might not go precisely to the unfettered judgment of twelve men, sworn to give their verdict honestly and conscientiously, as they did in murders or felony, or other crimes of a high nature." Lord Camden, to whom much of the credit for the passage of the bill was due, said that "he did not apprehend that the bill had a tendency to alter the law, but merely to remove doubts that ought never to have been entertained." All of these extracts can be found set out in the opinion of Mr. Justice Gray, in *Sparf* v. *United States,* 156 U. S. 136, 15 Sup. Ct. 273, 39 L. Ed. 373, together with citations for the authority therefor.

In *Rex* v. *Burdett,* 4 B. & A. 131, 1 How. St. Trials (N. S.) 1, it was said by Best, J.: "It must not be supposed that the statute of George III made the question of libel a question of fact. If it had, instead of removing an anomaly, it would have created one. Libel is a question of law, and the judge is the judge of the law in libel as in all other cases; the jury having the power of acting agreeably to his statement of the law or not. All that the statute does is to prevent the question from being left to the jury in the narrow way in which it was left before that time. The jury was then only to find the fact of the publication, and the truth of the innuendoes; for the judges used to tell them that the intent was an inference of law, to be drawn from the paper, with which the jury had nothing to do. The legislature has said that it is not so, but that the whole case is to be left to the jury."

In *Reeves* v. *Templar,* 2 Jur. 137, it was said by Lord Abinger, referring to Fox's libel act: "Before that statute a practice had arisen of considering that the

question, libel or no libel, was always for the court, independent of the intention and meaning of the party publishing. The statute corrected the error, and now, if the intention does not appear on the body of the libel, a variety of circumstances are to be left to the jury from which to infer it; but it was never intended to take from the court the power of deciding whether certain words are *per se* libelous or not."

In the case of *Darmiter* v. *Coupland,* 6 Mees. & W. 105, Parke, B., said to counsel, during the course of the argument: "In criminal cases the judge is to define the crime and the jury are to decide whether the party has committed that offense. Mr. Fox's act made it the same in cases of libel, the practice having been otherwise before." And in the opinion rendered by him in the case he further said: "Mr. Fox's libel bill was a declaratory act, and put prosecutions for libel on the same footing as other criminal cases."

It is, therefore, in the language of Mr. Justice Harlan, in *Sparf* v. *United States,* 156 U. S. 98, 15 Sup. Ct. 273, 39 L. Ed. 360, "a mistake to suppose that the English libel act changed in any degree the general common-law rule in criminal cases as to the right of the court to decide the law, and the duty of the jury to apply the law thus given to the facts, subject to the condition, inseparable from the jury system, that the jury by a general verdict of necessity determined in the particular case both law and fact as compounded in the issue submitted to them. That act provides that 'the court or judge, before whom such indictment or information shall be tried, shall, according to their or his discretion, give their or his opinion and directions to the jury on the matter in issue between the king and the defendant, in like manner as in other criminal cases.' 'This seems,' Mr. Justice Curtis well said, 'to carry the clearest implication that, in this and all other criminal cases, the jury may be directed by the judge, and that, while the object

of the statute was to declare that there was no other matter of fact besides publication and the innuendoes to be decided by the jury, it was not intended to interfere with the proper province of the judge to decide all matters of law.' *United States* v. *Morris,* 1 Curt. 55 (Fed. Cas., No. 15,815).''

In 23 Am. and Eng. Ency. of Law, 549, it is stated that this act ''did not change in any degree the general common-law rule in criminal cases as to the right of the court to decide the law, and the duty of the jury to apply the law thus given to the facts subject to the condition, inseparable from the jury system, that the jury by a general verdict of necessity determine in the particular case both the law and the fact as compounded in the issue submitted to them.''

The first constitutional provision of this character adopted in America seems to have been that contained in the Constitution of Pennsylvania, which was adopted in 1790, and is substantially the same as the provision of our Constitution. This occurred while the controversy over the rights of juries was at its height in England, after the trial of the case of the Dean of St. Asaph, and Fox's libel bill was still pending in parliament.

After the disagreement of the judges in the case of *People* v. *Croswell, supra,* in 1804, and while that case was still pending, the legislature of the state of New York enacted a statute declaring that: ''Whereas, doubt exists, whether, on the trial of an indictment or information for libel, the jury have a right to give their verdict on the whole matter in issue: Be it therefore enacted, etc., 1. That on every such indictment or information, the jury who shall try the same shall have a right to determine the law and the fact, under the direction of the court, in like manner as in other criminal cases, and shall not be directed or required by the court or judge, before whom such indictment or information shall be tried, to find the defendant guilty, merely on proof of the publi-

cation by the defendant of the matter charged to be libelous, and of the sense ascribed thereto in such indictment or information: Provided, nevertheless, that nothing herein contained shall be held or taken to impair or destroy the right and privilege of the defendant to apply to the court to have the judgment arrested, as hath heretofore been practiced. 2. That in every prosecution for writing or publishing any libel, it shall be lawful for the defendant, upon the trial of the cause, to give in evidence, in his defense, the truth of the matter contained in the publication charged as libelous: Provided, always, that such evidence shall not be a justification, unless, on the trial, it shall be further made satisfactorily to appear, that the matter charged as libelous was published with good motives and for justifiable ends." "We are thus introduced," in the language of the supreme court of New Jersey, in *Drake* v. *State,* 53 N. J. Law, 23, 20 Atl. 747, "to the very language of that part of our constitutional provision which affords a complete defense to one prosecuted for libel, when he makes it appear to the jury that he published the truth with good motives, and for justifiable ends, and which establishes the rights of the jury, in such prosecutions, to determine the law and the fact. Its sources, we think, render its meaning evident."

The enactment of this statute was largely influenced by the argument of Alexander Hamilton in the case of *People* v. *Croswell, supra,* and by the opinion of Chancellor Kent rendered in the case. Hamilton only contended for the right of juries in libel cases to render a verdict as broad as the issue involved, and this contention was upheld by Chancellor Kent in the opinion rendered by him in the case. This provision was incorporated into our first Constitution, adopted in 1817, while this controversy over the rights of juries in libel cases was fresh in the minds of all men conversant with the then recent history of this country and of England.

Had this controversy never arisen, there would have been no necessity for the adoption of this provision. Since the controversy centered around the rights of juries to render a general verdict in libel cases, as broad and comprehensive as such a verdict is in all other criminal cases, the conclusion is irresistible that its adoptfon was for the purpose of settling the right of juries so to do, and not to confer upon them the right to determine the law for themselves without the assistance, or against the direction, of the court. Indeed, any doubt on this point ought to be removed by the language of the Constitution itself, for it does not simply provide that the jury shall determine the law and the facts, but provides that it shall do this ''under the direction of the court.'' *State* v. *Burpree,* 65 Vt. 1, 25 Atl. 964, 19 L. R. A. 145, 36 Am. St. Rep. 775, 790; *Com.* v. *Anthes,* 5 Gray (Mass.) 185; *Drake* v. *State,* 53 N. J. Law, 23, 20 Atl. 747; 2 McClain's Cr. Law, § 1070; 3 Greenleaf, Evidence, § 179; *Com.* v. *McManus,* 143 Pa. 64, 21 Atl. 1018, 22 Atl. 761, 14 L. R. A. 89; *State* v. *Syphrett,* 27 S. C. 29, 2 S. E. 624, 13 Am. St. Rep. 617; *Brown* v. *State,* 40 Ga. 689; *Edwards* v. *State,* 53 Ga. 428; *Sparf* v. *U. S.,* 156 U. S. 51, 15 Sup. Ct. 273, 39 L. Ed. 343; Cooley's Const. Lim. (7th Ed.), 665; *Franklin* v. *State,* 12 Md. 236; *Harris* v. *State,* 75 Tenn. 538.

If juries have the right to determine the law of libel for themselves, free from the control of the court, the result would be not only that the law would be uncertain because of the different views which different juries might take of it, but their judgment of the law, however erroneous, would be final; for in that event, neither the trial court nor this court would have any right to review same, and could grant no relief to a defendant, however erroneously he may have been convicted. The court would have no right to decide any question of law which might arise on the trial, by demurrer or otherwise. Should a citizen, under this construction of the Consti-

tution, be indicted for libel, and the matter charged to be such be never so harmless or lawful, the court would be powerless to prevent his conviction and punishment, should the jury decide that, in its judgment, the matter charged was libelous. The jury would be the judge of the meaning of the Constitution and statutes, whether statutes were valid, what the common law is, what the law of privilege is—in short, of all questions of law which would arise on the trial. We are aware that those courts which have construed similar constitutional provisions in accordance with appellant's contention deny that this result follows therefrom; but in doing so they have involved themselves in all sorts of absurdities by attempting to limit the right of juries to determine the law for themselves, when, if the Constitution confers such a right, it confers it without limit. Our view of the result of such an interpretation of this provision of the Constitution is sanctioned by the great name of Story in *U. S.* v. *Battiste,* 2 Sumn. 240, Fed. Cas., No. 14,545, and by the Supreme Court of the United States in *Sparf* v. *U. S., supra.* It is true these were not libel cases; but it will not be questioned that the principles therein announced apply to such cases. It follows, from the foregoing views, that the court committed no error in granting the instruction now under consideration, neither did the court err in refusing to permit counsel to read law books to the jury. *Ayers* v. *State,* 60 Miss. 709; *Bangs* v. *State,* 61 Miss. 363.

Complaint is made of the action of the court below in granting the sixth and seventh instructions requested by the state and in refusing the seventh instruction requested by appellant. The instructions granted by the court on behalf of the state are as follows: (6) "The law implies a malicious intent from the deliberate publication of any matter which imputes to another the commission of any criminal offense, and it is not necessary that any express malice or evil intent should be shown."

(7) "If, therefore, the jury believe from the evidence. beyond a reasonable doubt that the defendant, J. C. Oakes, falsely published a handbill or circular in evidence, charging that Robert L. Bullard violated the law in his official capacity, then the defendant is guilty as charged, and the jury should so find; and this is true without reference to whether the defendant's motives were good or bad, and without reference to whether he believed them to be true or untrue."   .By the seventh instruction requested by the defense and refused by the court the court was requested to charge the jury among other things, that, if they "believed from the evidence that the matters contained in the circular and alleged in the indictment to be libelous were published of and concerning a public officer, and were matters of public interest, and that the defendant proceeded with good motives upon probable grounds, upon reasons which were apparently good, but upon a supposition which afterwards turned out to be unfounded, then the defendant was excusable and the jury should acquit him, although they may believe that the charges were in fact untrue."

The exact question we are called upon by this assignment of error to answer, and the one to which our response shall be limited, is this: Is a communication, false in fact, addressed to the general public, imputing the commission of a criminal offense or of moral delinquency to a public officer in the discharge of his official duties, privileged, when same is made in good faith, and on probable cause? If the defendant is limited to the defense provided by the Constitution and statute, he is entitled to an acquittal only in the event the statements made by him are true or do not appear beyond a reasonable doubt to be false. Appellant claims, however, that he is not limited to the language of the Constitution and statute, but is entitled to invoke, and that the requested instruction announces, the law of privilege. The law of privilege relating to communications addressed to the

general public concerning public officers is thus stated in 18 Am. and Enc. of Law, p. 1041: ''The official acts of public officers may lawfully be made the subject of fair comment and criticism, not only by the press, but by the members of the public. But the prevailing rule is that charges imputing a criminal offense or moral delinquency to a public officer cannot, if false, be privileged, though made in good faith, and this though the charge relates to an act of the officer in the discharge of his official duties.'' In 25 Cyc., p. 402, the rule is stated as follows: ''Comment on and criticism of the acts and conduct of public men are privileged, if fair and reasonable and made in good faith. But the right to criticise does not embrace the right to make false statements of fact, to attack the private character of a public officer, or to falsely impute to him malfeasance or misconduct in office.'' The rule as stated by these texts is fully supported by the legion of authorities there cited. A communication imputing the commission of a criminal offense or of moral delinquency to a public officer, even in the discharge of his official duties, is therefore not privileged, and the only defense for so doing is that same is true, and, in addition, was published from good motives and for justifiable ends. If the communication is in fact untrue, the motive with which it is published is wholly immaterial. The court, therefore, committed no error in granting and refusing the instructions now under consideration.

Appellant testified in his own behalf on the trial in the court below, and while on the stand was asked by his counsel what his motive in publishing the circular was, and what was the end he expected thereby to accomplish. To those questions objections were interposed by the state and sustained by the court. Should the jury have believed that the matter charged to be libelous was true, then, but, of course, not until then, appellant's motive in publishing same became very material; for it must

still appear that the publication was made "with good motives and for justifiable ends." There was no direct evidence of motive, and the jury were left to ascertain same from circumstances. On the evidence it is difficult to determine what the defendant's motive was. It may have been one of several, which we will not, for obvious reasons, set out or comment upon. Some of them, would have been good; others, bad. This evidence, therefore, was aimed at what may have been one of the most material points in the case. We are not advised upon what ground same was excluded by the trial court. It may be, as indicated in the brief of counsel for appellant, that it was excluded upon the theory that a witness is disqualified from testifying to his own intent or motive, where that intent or motive is material to be investigated; but the rule is otherwise. Such a witness is not disqualified from so testifying. 1 Wigmore on Evidence, § 581. The defendant was entitled to tell the jury what his motive was, so that the jury might consider his statement thereof, along with all the other evidence in the case, in arriving at the truth of the matter under investigation.

This action of the court was fatal error; and, since the judgment of the court below must be reversed therefor, it becomes unnecessary for us to notice the many other assignments of error.

*Reversed and remanded.*