BENTALL v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. December 16, 1919.)

No. 5297.

1. CRIMINAL LAW ⟐⟐24—NECESSARY INTENT IMPLIED FROM ACT.

Where an act, to be criminal, must be knowingly and willfully done, not only a knowledge of the act is implied, but a determination, with a bad intent, to do it.

2. CRIMINAL LAW ⟐⟐24—INTENT PRESUMED FROM NATURAL RESULT OF ACT IS REBUTTABLE.

The presumption of wrongful intent of a defendant, based upon the natural result of his words or acts, is not conclusive, but rebuttable, and this rebutting evidence may take the form of testimony by defendant that he intended no such results.

⟐⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CRIMINAL LAW ☞772(5)—INSTRUCTION AS TO INTENT ERRONEOUS.

An instruction in a criminal case, which stated without qualification that a man could not say that he did not intend to do a certain thing, when such thing was the natural result of his act, *held* erroneous where a specific intent was essential to the crime charged, and defendant testified that he did not have such intent.

Carland, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Criminal prosecution by the United States against Jacob O. Bentall. Judgment of conviction, and defendant brings error. Reversed.

Seymour Stedman, of Chicago, Ill. (Thomas E. Latimer, of Minneapolis, Minn., on the brief), for plaintiff in error.

Alfred Jaques, U. S. Atty., of Duluth, Minn.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

STONE, Circuit Judge. Conviction on two of three counts for violation of section 3 of the Espionage Act of June 15, 1917 (40 Stat. 219, c. 30), through utterances in a public speech.

While the indictment was challenged in the brief, counsel for plaintiff in error, in the oral argument, conceded its sufficiency. The indictment alleged the utterance of the objectionable words in the presence of two apprenticed seamen, Mersen and Ford. It is contended that the evidence failed to show the presence at the meeting of these two men. This claim is not well founded.

The charge is attacked for several alleged errors. The first is that the court, in the opening portions of the charge, made prejudicial statements. This portion of the charge is:

"I confess—I may almost say that I proudly confess—that at a time like this I have intense feelings. It is natural with one whose ancestor has given his life on the battlefields of the Revolution that at a time like this he should feel intensely, and on that account I have tried throughout this trial not to show or give any indication of what my opinion is as to the facts proved by this evidence."

This expression was unnecessary, and approached the objectionable. However, it was followed by a clear caution that the jury were the exclusive triers of the facts, and there were no other statements in the charge which accentuated the part just quoted. It is also urged that the charge was erroneous upon the matter of intent. The portion designated is:

"A man cannot say he did not intend to do a certain thing, when the natural consequence of his act is bound to be so and so."

[1, 2] The bearing of this upon the evidence is that the defendant not only denied making the statements alleged in the indictment, but he specifically denied that he ever, and particularly upon the date charged, intended to obstruct the recruiting or enlistment service, or to attempt to cause insubordination, disloyalty, mutiny, and refusal of duty in the military or naval forces. In other words, he denied

the criminal intent necessary to the crimes charged. This intent was a most material element, which must be found by the jury. The case of the government upon this point rested mainly, if not entirely, upon the words themselves, coupled with their utterance to a large crowd of people of various ages, some proven to be within the draft and enlistment ages. In its essence this proof rested upon the words themselves and their natural and probable effect upon such auditors. It is true that, when one knowingly does an act (including the utterance of words), the presumption arises that he intended the results which would naturally follow. Reynolds v. United States, 98 U. S. 145, 167, 25 L. Ed. 244. But where the act must, as here, be "knowingly and willfully" done to be criminal, not only a knowledge of the act is implied, "but a determination with a bad intent to do it." Felton v. United States, 96 U. S. 699, 702, 24 L. Ed. 875; Hicks v. United States, 150 U. S. 442, 449, 14 Sup. Ct. 144, 37 L. Ed. 1137. And the presumption of wrongful intent, based upon the natural result of the words or acts, while constituting strong evidence of the presence of such intent, is not conclusive, but rebuttable. Hicks v. United States, supra, 150 U. S. 447, 449, 14 Sup. Ct. 144, 37 L. Ed. 1137. This rebutting evidence may take the form of testimony by the defendant that he intended no such result. Hicks v. United States, supra, 150 U. S. 449, 14 Sup. Ct. 144, 37 L. Ed. 1137; Oakes v. State, 98 Miss. 80, 54 South. 79, 33 L. R. A. (N. S.) 207; State v. Marfaudille, 48 Wash. 117, 92 Pac. 939, 14 L. R. A. (N. S.) 346, 15 Ann. Cas. 584; Kerrains v. People, 60 N. Y. 221, 228, 19 Am. Rep. 158; Greer v. State, 53 Ind. 420; White v. State, 53 Ind. 595; People v. Farrell, 31 Cal. 576, 582; State v. Harrington, 12 Nev. 125, 135; 8 R. C. L. p. 181; 16 C. J. 81, §§ 48, 49; 1 Wharton's Crim. Evid. (10th Ed.) § 431; 1 Wigmore on Evid. § 581.

[3] Such evidence was introduced by defendant. The above language of the charge minimized, if it did not entirely eliminate, that evidence. This part of the charge was emphatic and clear, and in its entirety is:

"A man's intention in doing or saying a thing must be ascertained from what he does or says. A man cannot say he did not intend to do a certain thing, when the natural consequence of his act is bound to be so and so. He cannot then come in and say that he never intended to do that. A man ought to be and must be judged by the natural consequences of his acts, the natural and necessary consequences of his acts. If this use of the words naturally and necessarily produces that effect, then you must judge of the intention of the man by the words themselves."

It would be an absurdity to say that a party has the right to introduce evidence upon a vital element of fact, but that the court might thereafter tell the jury they must disregard such evidence when it has been introduced. Nor can this portion of the charge be fairly construed as a mere comment upon the evidence, which might be saved by a cautionary statement that the jury are not bound by the judge's opinion of such facts. Even the careful and able United States attorney who tried this case did not have the temerity to suggest such a view, and it would require a fertile imagination to see the jury taking such a view of these positive, unequivocal statements

by the court. It is true that the language was immediately used in connection with count 2, upon which there was acquittal, but the three counts were for acts similar in general character, all involving an intent based upon the motive of interfering with the government in the creation and maintenance of its military forces in war time; all were based on different expressions in one public address, and as to intent each covered by identical testimony on the part of defendant. It is not likely, if even it be possible, that the jury would segregate in their minds this general language and apply it only to the offense charged in count 2. Nor is the defect cured by other parts of the charge, some of which accurately, and others of which more nearly, stated the law in this regard. This definite, positive statement made to the jury, when it returned for reinstruction, must have impressed and influenced the jury.

Other assigned errors need no notice, as for this error the judgment must be and is reversed.

CARLAND, Circuit Judge (dissenting). I feel obliged to dissent from the opinion of the majority in this case. The defendant was allowed to testify as to his purpose and intention in using the language he did in a public speech. The record presents an aggravated violation of the statute. For the purpose of determining the guilt or innocence of the defendant, the trial court's comment upon the weight to be given to his testimony in regard to his intent was absolutely true. No court or jury ever gives any weight to the testimony of a defendant in regard to his intent in the circumstances mentioned by the court in its charge, and any finding of a court or jury based upon such evidence would make a criminal trial a farce. The judge, as has been said by high authority, was not occupying the position of a moderator at a town meeting, but was charged with the duty of taking care that the outcome of the trial should be just. The trial judge had the right to give the jury his opinion of the weight to be given to testimony in the case, provided he left the facts to the jury to decide. This he did in the following language:

"I wish to caution you in the outset, gentlemen of the jury, before I proceed to explain the indictment and give you the law governing this case, and to say to you, as a part of the law governing this case, that you are the exclusive judges of the facts which have been proved by the testimony. That is not for me; that is your exclusive province. You are to consider this testimony, and to say upon your oaths and consciences what facts the testimony shows, and then you are to say by your verdict whether these facts compel, under the rule, a conviction of this defendant.

"You are not to be influenced, or in any way governed, by anything which I may have said, or by any act or expression of my own, during this trial, in the determination of these facts. As I have already said, you are the exclusive judges on that subject."

The authorities cited in the majority opinion simply decide that, where a specific intent is one of the ingredients of a crime, the person charged with such crime may testify as to his intention. This the defendant in the case at bar was allowed to do. If a person is charged with having made an assault with intent to kill, or to do great bodily

harm, and the evidence shows that the person charged held in his hands a loaded shotgun, and at a distance of five paces took deliberate aim and discharged the gun at another person, the universal judgment of all reasonable men would be to the effect that his testimony that he did not intend to kill or to do great bodily harm was worthless, and any consideration given to the same would be a wrong committed against the administration of justice. To reverse the judgment in this case, because the trial judge stated an obvious truth, would be a greater error than any committed by the trial court.

The judgment should be affirmed.